558 A.2d 1236

**Henry N. LIBBY**

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY.**

**No. 1548, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 12, 1989.

Thomas P. Meehan (Sherman, Meehan & Curtin, P.C., on the brief), Rockville, and Washington, D.C., for appellant.

Janet S. Zigler (Brault, Graham, Scott, & Brault, on the brief), Rockville, for appellee.

Argued before GARRITY, BLOOM and FISCHER, JJ.

BLOOM, Judge.

Appellee, Government Employees Insurance Company (GEICO), issued an automobile liability policy to appellant, Henry N. Libby, for a one year term beginning 1 February 1985. The policy was renewed for another one year term beginning 1 February 1986. It provided, *inter alia*, personal injury liability coverage of $500,000 per person and $1,000,000 per occurrence, but only $20,000/$40,000 uninsured motorist coverage.

On 1 July 1986, appellant was a passenger in a car that was struck head-on by a motor vehicle which crossed the center line of the roadway to do so. The tort-feasor apparently had no substantial assets other than an automobile liability insurance policy, and his carrier tendered the full amount of the policy limits, $100,000, in settlement of appellant's claim against its insured.

Contending that he had suffered losses, injuries, and damages in excess of $500,000, appellant brought an action against GEICO in the Circuit Court for Montgomery County, seeking a declaration that GEICO must provide him with uninsured motorist benefits, for the 1 July 1986 accident, up to the maximum available coverage of $500,000 per injured person. He also sought counsel fees and "such other further relief the court deems just and proper."

Following a non-jury trial, the court (Cave, J.) ruled in favor of GEICO, declaring that Mr. Libby is not entitled to have the contract of insurance reformed to provide uninsured motorist coverage equal to the liability coverage. This appeal is from that judgment.

### Issues

The parties do not agree on the issues that are presented on this appeal. As we see it, the questions before us are:
1. What duty is imposed upon a motor vehicle liability insurance carrier by Md. Code Ann., art. 48A, § 541(c)(2), to inform its insureds of the availability of underinsured motorist coverage?
2. Did GEICO breach that duty?
3. If GEICO did breach that duty, is reformation of the insurance contract an appropriate remedy?

### Facts

Appellant is a practicing attorney. His practice is confined to corporate and securities law; he has never been involved in any aspect of law dealing with negligence or insurance matters. Prior to 1 February 1985, appellant

carried automobile insurance with The Home Insurance Company. Faced with steadily increasing insurance rates, he began to explore the possibility of obtaining comparable coverage for less cost through another carrier. In January 1985, he telephoned GEICO's office and spoke to a Ms. Waters, who answered his questions concerning available coverage and premium rates. Satisfied that GEICO would provide the same coverage he had under the Home Insurance Company policy at considerably less cost, Mr. Libby chose to insure with GEICO. Being concerned that if he relied upon the mail to complete the transaction begun by telephone there might be a hiatus in his coverage, appellant went to GEICO's office, met with a sales representative, filled out an application, and received a binder. By so doing, appellant did not receive all the written information he would ordinarily have received either in the mail, if he had completed his transaction through Ms. Waters, or from the sales representative, if he had begun the transaction at GEICO's office. Of importance to this case is the fact that Mr. Libby did not receive information, at the time he became one of GEICO's insureds, that he could have obtained uninsured motorist coverage in a greater amount than the $20,000/$40,000 coverage GEICO included in the policy, not to exceed the $500,000/$1,000,000 personal injury liability coverage afforded by the policy. Appellant contended that he was actually misled by GEICO's agent, Ms. Waters; he testified he specifically asked her what was the maximum amount of uninsured motorist coverage he could get and was told $20,000 for injury to one person and $40,000 for all persons injured in a single occurrence. The court, however, found that Mr. Libby was mistaken in that regard; that it was GEICO's policy to inform prospective policyholders that they are entitled to have uninsured motorist coverage up to the maximum of their liability coverage; and that it was by reason of a misunderstanding or lack of communication, rather than any intentional or negligent misrepresentation, that appellant was not informed of the availability of the additional coverage. The court also

expressly found that if Mr. Libby had fully understood his right to obtain the additional coverage he would have paid the extra premium and obtained $500,000/$1,000,000 uninsured motorist coverage.

In the fall of 1985, about 90 days prior to the expiration of the initial term of the policy, GEICO sent appellant a renewal solicitation package that contained, in addition to a questionnaire, a quantity of promotional material, *i.e.*, information as to various kinds of insurance offered by GEICO. Included among that material was a form advising policyholders of the availability of uninsured motorist coverage in excess of the statutory minimum, up to the liability limits of the policy. The court expressly found that neither appellant nor his wife read any of the promotional or advertising material in the package and thus made no conscious decision not to avail themselves of the opportunity to increase the amount of the uninsured motorist coverage. The court reiterated its finding that appellant would have purchased the additional coverage if he had known it was available.

## I

Maryland Code Ann., art. 48A, § 541(c)(2), provides that every policy of motor vehicle liability insurance issued, sold, or delivered in this state shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article of the Annotated Code of Maryland,[1] for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of that vehicle. At present, the statute further provides:

There shall be available to the insured the opportunity to contract for higher amounts than those provided under

---

1. Md. Transportation Code Ann., § 17–103, requires a minimum coverage for bodily injury or death arising out of an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, and for property damage up to $10,000.

Title 17 of the Transportation Article if those amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy.[2]

The initial question that is presented by the facts of this case is what obligation does the statute impose on the insurer? Clearly, an insurer that told its policyholders that the maximum coverage obtainable was the required minimum of $20,000/$40,000 would (1) be guilty of a fraudulent or at least negligent misrepresentation and (2) would not be complying with the statutory mandate that there be available to the insured an opportunity to contract for a higher amount than the required minimum. That situation, however, is not the case here. Judge Cave found as a fact that GEICO did not make an intentional or negligent misrepresentation. But is it enough to refrain from misrepresenting the fact of availability? Is there an affirmative obligation on the part of an insurance carrier to inform its policyholders that additional coverage is available? It is certainly arguable that an insured who is not informed and does not know that additional coverage may be obtained does not have available to him the opportunity to contract for higher coverage.

Appellant contends that the statute imposes on the insurance carrier an affirmative duty to give its insureds notice of the availability of higher coverage and, what is more, to do so in what he refers to as a "commercially reasonable manner." In support of that contention, appellant refers us to cases from other jurisdictions, in which somewhat similar uninsured motorist insurance statutes were held to impose an obligation on insurance companies to notify their insureds of their right to obtain uninsured or underinsured motorist coverage up to the limits of their liability coverage.

Appellant's contention that an insurer is required to give notice of the availability of underinsured motorist coverage

---

2. By ch. 542 of the Acts of 1989, effective July 1, 1989, this subsection was amended by striking out "available" and inserting in lieu thereof "offered in writing."

in a "commercially reasonable manner" appears to be based on language employed by the Supreme Court of Minnesota in *Jacobson v. Illinois Farmers Ins. Co.*, Minn., 264 N.W.2d 804 (1978), and later in *Hastings v. United Pacific Ins. Co.*, Minn., 318 N.W.2d 849 (1982). *Jacobson* involved a statute (Minn.Stat.1971, §§ 65B.25 and 65B.26(d)) which provided that effective January 1, 1972, no automobile liability policy could be renewed, issued or delivered in Minnesota unless underinsured motorist coverage up to the limits of the policy were "made available" to the insured. The Court construed the statute as imposing upon the insurance company an affirmative obligation *to make* the coverage available, *i.e., to offer* the coverage. It then held that the insurance company, by enclosing in its semi-annual premium notices a "stuffer" which explained the coverage and included an application form, had employed a "commercially reasonable" method of notifying the insured of the availability of the coverage.

The Minnesota statute was amended in 1977. The amended version (Minn.Stat. § 65B.49, subd. 6(e) (1977 Supp.) (Repealed 1980)), employing language far more positive than "make available," provided that insurers "shall offer," as an optional coverage, underinsured motorist coverage in an amount at least equal to the insured's residual liability limits and also at lower limits. The Court in *Hastings* held the "offer" must contain sufficient information to enable the insured to make an intelligent choice and that notice of the option must be given the insured in a commercially reasonable manner. A letter that merely informed the insured that optional underinsured motorist coverage may be purchased, without explaining what underinsured motorist insurance means and without indicating that substantial protection could be obtained for only a small additional charge failed to meet the statutory obligation to "offer" the coverage. The remedy afforded by the lower court, reformation of the policy, was affirmed.

*Tucker v. Country Mutual Ins. Co.*, 125 Ill.App.3d 329, 80 Ill.Dec. 610 465 N.E.2d 956 (Ill.App. 4 Dist.1984), in-

volved an Illinois statute (§ 143–1 of the Illinois Insurance Code (1979 Ill. Laws 4771)) which provided that no motor vehicle liability insurance policy could be renewed or delivered or issued in Illinois unless underinsured motorist coverage is offered in an amount equal to the insured's uninsured motorist coverage limits. The Court adopted the same four-part test of compliance with that statute that the Supreme Court of Minnesota had applied to the similar Minnesota statute in *Hastings:* (1) if the offer is made in other than face to face negotiations, the notification process must be commercially reasonable; (2) the insurer must specify the limits of its optional coverages and not merely offer them in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverages; and (4) the insured must be advised that optional coverages are available for a relatively modest increase in premium. The Court held that, although the insurer had offered the coverage in a commercially reasonable way by including the notice in a policy renewal statement, the offer was insufficient to satisfy the statute because (a) it did not describe the limits of the optional coverage; (b) it did not mention the cost; and (c) it did not contain an intelligible description of underinsurance coverage.

*Groover v. Torkell,* 645 S.W.2d 403 (Tenn.App.1982), involved a Tennessee statute (T.C.A. § 56–7–1201), which provided, in pertinent part:

> Effective September 1, 1974, every insured purchasing or renewing a policy of insurance under the provisions of the first paragraph of this section shall be provided an opportunity to also purchase uninsured motorist insurance limits greater in amount than the requirements of § 55–12–107.

The Court concluded that the statute was complied with if the insured knew that uninsured motorist coverage in amounts above the minimum required by law could be purchased at the time of purchasing a new policy or renewing an existing one, or at the time of any other policy change. The holding in the case was that in view of the

fact that there was evidence to the effect that the insurance company had sent the insured renewal packages containing a form advising the insured of the availability of additional coverage, the trial court had erred in taking that issue from the jury.

Delaware imposes much more stringent requirements upon insurance companies. Insurers issuing new policies must not only *offer* increased coverage to their policyholders, they must *furnish* the additional coverage unless the insured rejects it. 18 Del.C. § 3902(b). In *State Farm Mutual Auto Ins. Co. v. Arms*, 477 A.2d 1060 (Del.Supr. 1984), it was held that the failure of the insurer, when it rewrote an existing policy, to provide the additional coverage by offering it and including the coverage unless rejected, violated the statutory obligation. The insured's remedy was to regard the offer as continuing, so he could accept it after the accident. *See also O'Hanlon v. Harford Accident and Indemnity Company*, 522 F.Supp. 332 (D.Del. 1981). We find the Delaware cases to be completely inapposite to this case; the obligations imposed upon insurers by the Delaware statute are not comparable to the duties imposed by art. 48A, § 541(c)(2) of the Maryland Code.

The Maryland statute which was in effect when the policy in question was issued and which continues in effect until July 1, 1989 (see n. 2), unlike the Illinois statute and the amended version of the Minnesota statute, does not require the insurer to *offer* increased underinsured motorist coverage. Indeed, it does not directly require the insurer to take any specific action; it merely provides that there shall be available to the insured an opportunity to obtain such coverage. We find it particularly significant that, as originally introduced in the General Assembly during its 1981 legislative session as Senate Bill 17, the proposed act contained language to the effect that the insurer be obligated to offer the coverage. That language was stricken out and the statute, as passed, merely provided that an opportunity to purchase be available. Since there is no requirement under the Maryland statute to make an offer, the four-part

test announced by the Minnesota Supreme Court in *Hastings* and adopted by the Illinois Appellate Court in *Tucker* will not be applied to this case. That four-part test derived from the statutorily imposed duty to *offer* the coverage; the Maryland requirement that the coverage *be available* was not intended to impose such strict obligations on the insurer. Whether the four part test of *Hastings* and *Tucker* should be applied to the Maryland statute after the amendment becomes effective is not an issue that can be addressed in this opinion.

Indeed, we perceive some subtle but arguably significant difference between the language of the Maryland statute— "there shall be available to the insured the opportunity to contract"—and the "made available" language of the original Minnesota statute and the "shall be provided an opportunity" language of the Tennessee statute. Both "made available" and "shall be provided an opportunity" imply an obligation to take some affirmative action specifically directed to the insured; "be available" has a somewhat more passive connotation.

Nevertheless, we believe that an insured who is unaware of an opportunity to obtain increased coverage cannot be said to have that opportunity available to him. We conclude, therefore, that the statute does impose an affirmative duty upon the insurer to notify its insureds that the coverage is available. We are not certain what constitutes a "commercially reasonable" manner of giving that notice, as that term was used by the Minnesota and Illinois Courts and by appellant, since none of them bothered to define the term, but if the insurer is required to give notice to its insured of an opportunity to increase his coverage, it must surely be required to do so in a reasonable manner, *i.e.*, a manner reasonably calculated to get the information into the hands of the party to be notified. This does not mean that the insurer will fail in its obligation to notify the insured if the insured receives the notice but neglects to read it. We hold, therefore, that the statutory duty is met and that the opportunity to contract for the additional

coverage is available if the insurer (1) will issue it upon request and (2) has taken reasonable steps to inform its insureds that such coverage is available to them.

## II

 Judge Cave found, and there was sufficient evidence to justify that finding, that through some misunderstanding or lack of communication Mr. Libby did not receive the underinsured motorist coverage notice that GEICO normally gives applicants for insurance and therefore was unaware at the time he became insured by GEICO that he could obtain increased uninsured motorist coverage. In view of what happened subsequently, however, we agree with Judge Cave that it is not necessary to decide whether this inadvertence amounted to a violation of GEICO's statutory duty. The court found, and there was sufficient evidence to support that finding, that GEICO corrected this error in the fall of 1985 when it sent out the renewal package containing its M–9 form (the document giving notice of the availability of underinsured coverage) and that the package was received by Mr. Libby. That package was described as containing a form letter of transmittal, a questionnaire, and several papers referred to by appellant as "stuffers," at least four of which were advertisements or sales pitches for other types of insurance available from GEICO.

We hold that GEICO complied with its statutory duty to give notice when it sent out the M–9 form advising the insured of the availability of increased underinsured motorist coverage in various specific amounts up to the bodily injury liability limits, informing the insured that the cost of such additional coverage would range from $13 to $91 depending on the amount of coverage selected and the insured's location, and requesting that the insured indicate on the form the amount of coverage desired and return the form if he wanted to make a change. The evidence reflects that GEICO's purpose in sending its pre-renewal questionnaire to an insured 70 to 90 days prior to expiration of his

or her policy is to update information in its files that would affect the premium rate, *e.g.*, accidents, traffic violations, addition or deletion of operators or vehicles, change in the use of the insured vehicle. The questionnaire specifically stated that it was to "help us develop the most accurate rating classification." Enclosing the M–9 form as a "stuffer" in the questionnaire package was a reasonable method (a "commercially reasonable" method, according to *Jacobson v. Illinois Farmers Ins. Co., supra*) of giving notice to the insured of the available opportunity to increase his uninsured motorist coverage. We do not believe that the inclusion of additional "stuffers" advising the insured of the availability of other insurance from GEICO in any way detracted from the reasonableness of the notification.

Appellant argues that the M–9 form and other "stuffers" were not sent out at renewal time, when he would be likely to pay attention to them, but three months before renewal time, which was not reasonable notice to him. We disagree. The questionnaire package was a pre-renewal mailing, specifically designed to obtain information pertinent to renewal of the policy. Appellant clearly recognized the importance of the questionnaire with regard to policy renewal. He filled it out and returned it promptly. It was therefore particularly appropriate to use that opportunity to advise Libby of the availability of additional coverage so any change in coverage could be included in the new policy.

Appellant asserts that Judge Cave agreed that it was natural and reasonable for Mr. and Mrs. Libby to overlook or ignore the M–9 form and the other "stuffers." We do not read Judge Cave's remarks as going quite that far. But even if there had been an express finding that appellant's conduct was not unreasonable, our holding would not be affected. The question is whether the insurer gave reasonable notice that the opportunity to contract for additional coverage was available, not whether the insured was negligent in overlooking that notice.

III

Since we hold that GEICO did not breach its statutory duty to make available to its insureds an opportunity to contract for uninsured motorist coverage in excess of the $20,000/$40,000 minimum, not to exceed the limits of the liability coverage, we find it unnecessary to determine whether reformation of appellant's policy would have been an appropriate remedy if there had been a breach of duty.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.