**Marcus EDENS and his father and next friend Kenneth Edens, Appellants,**

v.

**SHELTER MUTUAL INSURANCE COMPANY, Appellee.**

**No. 90–1675.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 1, 1990.

Decided Jan. 7, 1991.

Brent Sterling, Fayetteville, Ark., for appellants.

James M. Roy, Jr., Springdale, Ark., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

PER CURIAM.

This case involves interpretation of Arkansas' underinsured motorist statute, Ark.Code Ann. § 23–89–209 (Supp.1989). Marcus Edens appeals the district court's [1] grant of summary judgment in favor of Shelter Mutual Insurance Company on Edens' state law claim for underinsured motorist insurance benefits. We affirm.

## BACKGROUND

Marcus Edens was a passenger in a vehicle owned by Irwin and Sandra Johnson

---

**3.** He also maintains that the Guidelines violate his fifth amendment due process rights. This argument is without merit.

**1.** The Honorable H. Franklin Waters, United States District Judge, Western District of Arkansas.

and driven by their son. On October 13, 1988, the Johnson's automobile was struck by another vehicle and Edens sustained serious injuries. Edens obtained a $25,000 settlement from the insurance company of the other driver. Because that sum was insufficient to compensate him for his injuries, Edens then instituted this suit in Arkansas state court against Shelter Mutual Insurance Company ("Shelter Mutual"), the insurer of the Johnson vehicle. Diversity of citizenship exists, and Shelter Mutual removed to federal district court.

In the district court, Edens claimed he was entitled to underinsured motorist benefits[2] under the Johnsons' policy. Shelter Mutual acknowledged that the Johnsons had an insurance policy with the company for a number of years, but stated that the Johnsons never purchased underinsured motorist coverage under that policy. Shelter Mutual submitted copies of various documents showing the Johnsons' renewal and coverage changes under the policy between 1983 and 1988 demonstrating that underinsured motorist coverage was never elected. Edens responded that Shelter Mutual violated an Arkansas statute that requires insurance companies to "make available" underinsured motorist coverage to policyholders such as the Johnsons, and that such coverage should therefore be imputed as a matter of law. Ark.Code Ann. § 23–89–209 (Supp.1989). Shelter Mutual countered that they had complied with the statute, and that even if they had not there was no basis for imputing coverage. Further, Shelter Mutual argued that even if such coverage were imputed to the Johnsons, Edens could not recover under that policy as a mere passenger in the Johnsons' automobile.[3]

The district court found that the disposition of the case turned upon interpretation of the "make available" language in the Arkansas statute. The court noted that the statute had not been interpreted in any previous reported decision. In granting summary judgment in favor of Shelter Mutual, the district court held that no genuine issue of material fact was presented, and found as a matter of law that Shelter Mutual had complied with Arkansas' underinsured motorist insurance statute.

## DISCUSSION

The parties are sharply divided over whether material issues of fact exist. The resolution of this question depends on whether the district court correctly interpreted the Arkansas underinsured motorist statute. Accordingly, we turn to that question first.

### I.

#### A.

Arkansas Code Ann. § 23–89–209 (Supp. 1989) provides, in relevant part:

(a) Every insurer writing automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicles in this state shall make underinsured motorist coverage available to the named insured, which coverage enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle.

The parties differ over what "shall make underinsured motorist coverage available" means. Shelter Mutual contends they complied with the statute by providing the Johnsons with insurance application forms containing a box which they could check if they wanted underinsured motorist coverage, and by filing rates and endorsements for such coverage with the Arkansas Insurance Commissioner. Edens argues that

---

**2.** Underinsured motorist coverage provides benefits when the policyholder, involved in an accident with another vehicle, is legally entitled to recover damages that exceed the offending motorist's insurance coverage. *Jacobson v. Illinois Farmers Ins. Co.,* 264 N.W.2d 804, 805 n. 1

(Minn.1978). *See generally* Appleman, *Insurance Law & Practice* § 5103 (1981).

**3.** It is undisputed that neither Marcus Edens nor any one in his family has ever had an insurance policy with Shelter Mutual Insurance Company.

Shelter Mutual was required to take commercially reasonable steps to make available underinsured motorist coverage, not merely sell such coverage to those knowledgeable enough to request it. Assuming the statute can be read to require commercially reasonable steps, a jury issue is created and summary judgment would be inappropriate, Edens contends.

As a federal court interpreting a state statute, we are bound by the construction given the statute by the highest court within the state that has addressed the matter. *Chandler v. Presiding Judge, Callaway County*, 838 F.2d 977, 979 (8th Cir.1988). Here, however, no reported Arkansas decision has interpreted this statute and it is thus a matter of first impression. Without any direct guidance from the Arkansas courts, the court must look to other expressions of the Arkansas legislature on similar subjects as well as judicial interpretations from other jurisdictions that have enacted similar legislation.[4]

## B.

Arkansas' *un*insured and "no-fault" motorist statutes provides useful insight into the meaning of the *under*insured provision at issue. The uninsured motorist statute provides that such coverage inheres in the policy unless the insured specifically rejects the coverage. Ark.Code Ann. § 23–89–403 (Supp.1984). Arkansas' "no-fault" statu-

tory scheme is similarly written. Ark.Code Ann. § 23–89–202 (Supp.1989). These are typical "opt-out" provisions. In contrast, § 23–89–209, the underinsured motorist statute, does not require an insured to reject such coverage if they do not want it to become part of their policy coverage. This difference in language likely demonstrates the Arkansas legislature's policy decision that uninsured and no-fault insurance are so vital that they will be assumed to be part of a policy unless rejected, while underinsured motorist coverage is less vital and must merely be available for election by an insured.

As the district court notes, judicial decisions from other jurisdictions with underinsured motorist statutes are somewhat in disharmony. Most decisions interpreting such statutes deal with language different from the "make available" language contained in the Arkansas statute.[5] Edens principally relies on *Jacobson v. Illinois Farmers Ins. Co.*, 264 N.W.2d 804 (Minn. 1978), which interpreted an underinsured motorist statute providing that such coverage "shall be made available." *Id.* at 806. The court decided that the insurer had taken "commercially reasonable" steps to make underinsured motorist coverage available by including an application and information about the coverage along with its regular renewal notices. *Id.* at 808.[6] Edens contends that we should also adopt the "commercially reasonable" test and use

---

**4.** Neither party cites any legislative history that may shed light on the Arkansas legislature's intent in enacting § 23–89–207.

**5.** *See, e.g., State Farm Mut. Auto. Ins. Co. v. Arms*, 477 A.2d 1060 (Del.Supr.1984) (interpreting statute requiring insurer to furnish underinsured coverage unless expressly rejected); *Tucker v. Country Mutual Ins. Co.*, 125 Ill.App.3d 329, 80 Ill.Dec. 610, 465 N.E.2d 956 (1984) (interpreting statute providing that no motor vehicle insurance policy could be renewed or delivered in Illinois unless underinsured motorist coverage is offered).

In *Flowers v. Wells*, 602 S.W.2d 179 (Ky.App. 1980), the Kentucky Court of Appeals interpreted a Kentucky statute, Ky.Rev.Stat. § 304.39–320, specifying that insurers "shall make available [underinsured motorist coverage] upon request." The court held as a matter of law that when an insured elects "full cover-

age" on an insurance form, underinsured motorist coverage is not part of the policy because the statute makes such coverage optional, not mandatory. *Id.* at 181.

**6.** Edens also relies on *Libby v. Government Employees Ins. Co.*, 79 Md.App. 717, 558 A.2d 1236 (1989). In *Libby*, the Maryland Court of Special Appeals was interpreting a Maryland statute which stated that "there shall be available to the insured the opportunity to contract for higher amounts" of insurance coverage. 558 A.2d at 1238. The court concluded that insurers were under an affirmative duty to notify its customers that they had the right to contract for coverage higher than the statutory minimum, and found that the insurance company in that case complied with the statute by including information about increased underinsured motorist coverage available, along with an application form, in a renewal package sent to policyholders. 558 A.2d at 1240–41.

it to determine whether Shelter Mutual complied with the "make available" requirement.

## C.

■ The district court held that an insurer doing business in Arkansas complies with § 23–89–209 when it gives the named insured the opportunity to purchase underinsured motorist coverage by conspicuously including an option for such coverage on the face of the standard policy application, renewal notice, or change-in-coverage insurance forms sent to policyholders.

Edens argues that this interpretation puts consumers at a disadvantage because they may not understand the technical terms "underinsured motorist coverage" when printed on an insurance application. He argues that for consumers to have any real choice, an insurer must take steps reasonably calculated to explain the terms, costs, and benefits of underinsured motorist coverage offered to a policyholder. *See* A. Widiss, *Uninsured and Underinsured Motorist Insurance*, Vol. II, § 32.5 at p. 16 (2d ed.1990) (most underinsured motorist statutes "require—either explicitly or implicitly—an insurer to place the purchaser in a position to make an informed rejection of the coverage").

We think Edens' policy arguments are better addressed to the Arkansas legislature, not to a federal court sitting in a diversity action. As the Arkansas legislature already has done with uninsured and no-fault insurance, it can unambiguously require an insurer to do more than make underinsured motorist insurance available

for policyholders who want such coverage. The legislature could specify that underinsured coverage automatically is part of a policy unless specifically rejected by the policyholder. Alternatively, the legislature could, in unambiguous language, require insurers to provide specific information about benefits, rates, and exclusions under its underinsured motorist coverage, as other states have done. *See, e.g.,* N.J.Stat. Ann. §§ 39:6A–23; 17:28–1.1 (requiring insurance companies to provide information about underinsured motorist coverage). *See also Sikking v. Nelson,* 242 N.J.Super. 185, 576 A.2d 311 (N.J.Super.Ct.App.Div. 1990) (interpreting the New Jersey statutes and insurance commissioner regulations governing underinsured motorist insurance). Without more guidance from the Arkansas legislature or the Arkansas courts, we are unwilling to imply a commercial reasonableness test into the statute. We hold that Shelter Mutual complied with Ark.Code Ann. § 23–89–209.

## II.

■ Once the "make available" language of Ark.Code Ann. § 23–89–207 is properly interpreted, we agree with the district court that no genuine issues of material fact remain. Over the course of six years, Shelter Mutual conspicuously provided the Johnsons the opportunity to elect underinsured motorist coverage when extending or changing policy coverage.[7] The policy documents signed by the Johnsons and submitted to the district court show that the Johnsons never elected such coverage.[8] Shelter Mutual's action satis-

---

**7.** Edens argues that the application box for underinsured motorist coverage on the insurance forms provided by Shelter Mutual to the Johnsons was not conspicuous and was buried among boiler plate language. The application box was clearly labeled: "Show all coverages wanted on policy." Several available types of coverage were listed in one column, including underinsured motorist coverage. Other columns reflect the limits and renewal premiums available. We agree with the district court that the application box was conspicuously placed three inches above the Johnsons' signature block, and was presented in a simple, unambiguous, and straightforward manner.

**8.** Edens attempts to create a factual issue by claiming that it is unknown whether the Johnsons actually signed the various insurance documents containing the application box for underinsured motorist coverage. Shelter Mutual, however, included with its motion for summary judgment an affidavit from a Shelter Mutual employee stating that the applications were made by the Johnsons. Edens never filed any affidavits or other evidence challenging the authenticity of the copies of the Johnsons' insurance applications. To defeat summary judgment, it is incumbent upon Edens to come forward with affidavits or documents for issues on which he will have the burden of proof, show-

fies the "make available" language of the Arkansas statute and no issues of material fact remain. We thus have no need to consider whether underinsured motorist coverage would be imputed when an insurer violates Ark.Code Ann. § 23–89–207 by failing to make such coverage available. We also need not consider whether Edens could recover under such imputed coverage as a passenger in the Johnsons' vehicle.

We note that both parties have waived oral argument in the case. We deem this unfortunate. This is a close case. There appears to be no controlling Arkansas authority. Effective oral argument can provide great service to the court. Through questions from the bench, oral argument often helps illuminate complex issues and sometime causes a judge's preconceived attitudes to change. This court strongly encourages oral argument on appeal.

### CONCLUSION

The briefs have not persuaded us that the district court erred. We find the district court correctly granted summary judgment to Shelter Mutual, and its judgment is accordingly AFFIRMED.

ing specific facts that create a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).