Ruth Charlotte OVERHOLT, Plaintiff,

v.

Bradley Wayne McDANIEL, et al., Defendants.

Civ. A. No. 90–1681.

United States District Court, District of Columbia.

May 30, 1991.

Thomas Fortune Fay, Clower & Fay, P.C., Washington, D.C., for plaintiff.

Melvin R. Wright, Montedonico and Mason, Chartered, Rockville, Md., for defendant Nationwide.

REVERCOMB, District Judge.

On May 24, 1991, a bench trial was held in the above-referenced case. Upon consideration of the evidence presented at trial

and the pleadings in the case, the Court issues the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The plaintiff, Ruth Charlotte Overholt, was injured in a motor vehicle collision which occurred in Riverdale, Maryland, on November 14, 1989. While stopped to make a left turn, the plaintiff's car was rear-ended and pushed into other cars in front of her by a vehicle driven by the defendant Bradley Wayne McDaniel. As a result of the collision, the plaintiff suffered injuries including herniated cervical and lumbar discs necessitating two surgical procedures.

The plaintiff has incurred special/liquidated damages in an amount of $59,254.48. In addition, she has suffered a 40 percent total disability, extensive pain and suffering, inconvenience and other elements of damages which are unliquidated, for which the Court awards the plaintiff $250,000.00.

The plaintiff subsequently initiated this suit against McDaniel, who is uninsured, and against Nationwide Property and Casualty Insurance Company, the plaintiff's insurer. The plaintiff's claim against Nationwide is for uninsured motorist benefits under the plaintiff's policy with that carrier. On November 16, 1990, the Court entered a default judgment against McDaniel.

Although Nationwide does not contest the extent of the plaintiff's damages, it has raised a legal issue concerning the extent of uninsured motorist coverage ("UMC") to which the plaintiff is entitled under her policy. The facts relating to that issue were developed at trial.

The plaintiff first purchased an automobile insurance policy from Nationwide in January 1983. The plaintiff does not recall having discussed the specific terms of her policy with the Nationwide representative at that time. In fact, the plaintiff testified that her recollection was that she purchased the policy in 1981 or 1982. This testimony is contradicted by exhibits and testimony presented by Nationwide. Nationwide introduced at trial a form dated January 29, 1983, which is signed by the plaintiff and titled "Coverage and Limits Statement to Policyholders." Def.Ex. 3. Michael Dorgan, an employee of Nationwide familiar with policy-writing procedures, testified at trial that it is the customary practice of agents to sit down with new customers and discuss possible coverage before filling out a form like Exhibit 3. Exhibit 3 reflects that the plaintiff chose to purchase bodily injury and property damage coverage beyond the minimum limits required by law, but that she chose only the minimum UMC. Mr. Dorgan explained that the agent would have informed the plaintiff of the opportunity to purchase additional UMC; the plaintiff says that this was not explained to her when she purchased her policy. The plaintiff also testified that she never received a copy of her policy until the discovery in this litigation. A copy was provided to the Court as Plaintiff's Exhibit 19. The plaintiff's Nationwide policy expressly provides for a six-month renewable term. Pl.Ex. 19, ¶ 6.

In 1985, the State of Maryland enacted a provision to its Insurance Code stating that "[t]here shall be offered in writing to the insured the opportunity to contract for higher [UMC] amounts than those provided under Title 17 of the Transportation Article if those amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy." Md. Insurance Code Ann. § 541(c)(2) (1991) (amended July 1, 1989). In response to this enactment, Nationwide printed a "stuffer" to be sent with premium notices to all Maryland insureds for the renewal cycle beginning August 30, 1985. A copy of the "stuffer" was admitted into evidence as Defendant's Exhibit 1. In addition, Nationwide has provided other internal memoranda evidencing its actions to have the "stuffer" added to renewal notices in 1986. The evidence presented shows that the plaintiff promptly paid her renewal premium in February, 1986; yet she testified that she does not recall receiving the "stuffer" with her renewal notice.

The plaintiff continued to renew her policy with Nationwide every six months. No other information was provided to the

plaintiff concerning her opportunity to purchase additional UMC. In 1989, the Maryland law quoted above was amended effective July 1, 1989, to state that "[t]here shall be afforded in writing to the insured the opportunity to contract for higher amounts" of UMC. Md. Insurance Code Ann. § 541(c)(2) (1990 Cumulative Supp.). In response to this amendment, Nationwide prepared another "stuffer" to be sent with renewal notices. These stuffers were sent out beginning July 31, 1989. Plaintiff's renewal date was August 10, 1989. However, because renewal notices are sent twenty days in advance, the plaintiff would have received her renewal notice in July without a "stuffer." The defendant admits this fact but asserts that the plaintiff did receive the "stuffer" in her next renewal notice in February 1990.[1] The accident at issue in this case occurred on November 14, 1989.

## CONCLUSIONS OF LAW

■ The plaintiff has requested the Court to find that she is entitled to a higher limit of UMC coverage than that provided in her policy despite the fact that she never contracted for such coverage.[2] The plaintiff raises several legal and factual arguments in support of this claim. First, the plaintiff asserts that Nationwide failed at trial to prove that it in fact mailed the 1986 "stuffer" to her. Therefore, the plaintiff claims, Nationwide has filed to comply with the statutory requirement that it offer to her in writing the opportunity to purchase additional UMC.

The Court disagrees. The defendant's exhibits and the testimony of Mr. Dorgan[3] suffice to establish that Nationwide did send the "stuffer" to Maryland insureds in 1986. The fact that Nationwide cannot provide an acknowledgement that the "stuffers" were sent does not trouble the Court in light of the evidence that plans were made and instructions were issued to have the stuffers inserted by machine into the renewal notices.[4] It would be impracticable to require Nationwide to have documented that each stuffer was sent to each insured.

■ The plaintiff argues further that even had she received the 1986 "stuffer", the "stuffer" was not sufficient to advise her of her right to purchase additional UMC. In this respect, the plaintiff stresses that the notice was allegedly received 42 months prior to the accident which caused the plaintiff's injuries. In addition, the plaintiff argues that the language of the "stuffer", which describes the opportunity to purchase additional UMC as a "Special Offer", fails to notify the plaintiff that the opportunity is available on a continuing basis.

Because the plaintiff's accident occurred after the effective date of the 1989 amendments to the Maryland statute requiring that "[t]here shall be offered in writing to the insured the opportunity to contract for higher [UMC] amounts," the Court must consider whether the notice provided to the plaintiff by Nationwide satisfies this statutory requirement. The Maryland courts have not yet considered by what standard notice is to be evaluated under the amended statute; but that question was anticipated by the Maryland Court of Appeals in *Libby v. Government Employees Ins. Co.*, 79 Md.App. 717, 558 A.2d 1236 (1989). In *Libby*, the court considered the sufficiency of notice under the former statute. In its analysis, the court canvassed caselaw in other states and noted that Minnesota,

---

1. The plaintiff denies receiving the "stuffer" in 1990. She testified that she first was made aware of her ability to purchase additional UMC after bringing this suit. To date, however, the plaintiff has not purchased additional UMC.

2. The plaintiff's policy provides the minimum UMC required by law, $20,000.00. The plaintiff *could have purchased additional UMC up to the* amount of her liability coverage, $100,000.00.

3. Although Mr. Dorgan was not an employee of Nationwide in 1986 at the time these actions took place, the Court credits his testimony as to Nationwide's practices and procedures in explanation of the internal memoranda from that period provided by Nationwide.

4. Mr. Dorgan testified that the machine which inserts the "stuffers" into mailings has a mechanism which shuts down the insertion process if any envelop is not properly stuffed.

which has a law similar to Maryland's amended statute, the courts apply a four-part test for determining the adequacy of notice.[5] The Maryland court explained, however, that it did not have to decide "[w]hether the four part test ... should be applied to the Maryland statue after the [1989] amendment becomes effective." 558 A.2d at 1240.

■ The Court believes that Maryland would adopt the four-part test for purposes of evaluating the sufficiency of offers in writing made pursuant to the new statutory language. The test requires the Court to consider: (1) whether the notice is commercially reasonable; (2) whether the insurer specified the limits of its optional coverage or merely offered it in general terms; (3) whether the insured was intelligibly advised of the nature of the optional coverage; and (4) whether the insured was advised that optional coverage was available for a modest increase in premium. *Libby v. Government Employees Ins. Co.,* 79 Md.App. 717, 558 A.2d 1236, 1239 (1989) (citing *Hastings v. United Pacific Insurance Company,* 318 N.W.2d 849 (Minn. 1982)). The 1986 "stuffer" meets this test. The notice explains the nature of UMC and lists the specific minimum and maximum coverage amounts, as well as the semi-annual premium charges for the higher coverage limits.[6]

■ The plaintiff's next argument challenges the view that "notice sent for a prior renewal period is sufficient because it constitutes a continuing offer to the insured to purchase insurance thus satisfying the 1989 amendment." Pl. Memorandum of Law at 6. The plaintiff asserts that each renewal policy is a new contract, unless specifically provided otherwise in

the policy; therefore, the plaintiff appears to suggest that a new offer must be made with each renewal on this basis. The plaintiff, however, has misstated applicable caselaw. The Maryland Court of Appeals has stated:

> It is accepted as a general rule that a renewal of an insurance policy by the payment of a new premium and the issuance of a receipt therefore, where the renewal is in pursuance of a provision to that effect, is not a new contract but an extension of the old.

*World Ins. Co. v. Perry,* 210 Md. 449, 124 A.2d 259, 262 (1956). In this case, the plaintiff's policy contains a renewal provision pursuant to which she has renewed her policy every six months since 1983. Thus, such renewals did not result in new contracts.

For all of the reasons stated herein, the Court finds that Nationwide provided commercially reasonable notice in writing in 1986 of plaintiff's opportunity to purchase additional UMC. When the 1989 amendment went into effect, Nationwide was already in compliance, having provided prior written notice to the plaintiff of her UMC options. Nonetheless, even if Nationwide had not given notice in 1986, the Court finds that the efforts it took to notify the plaintiff and other Maryland insureds in 1989 were also commercially reasonable. The thirty-day delay in sending "stuffers" after the effective date of the 1989 amendment was reasonable in light of the preparations required in drafting, approving, printing and inserting the "stuffers" in the thousands of renewal notices sent to Maryland insureds.

Accordingly, the Court holds that the defendant Nationwide is liable only to the

---

**5.** The Minnesota law requires that "UMC up to the limits of the policy [be] 'made available' to the insured." 558 A.2d at 1238 (citing Minn. Stat. §§ 65B.25, 65B.26(d) (1971)).

**6.** The Court is not persuaded that the "Special Offer" language of the "stuffer" renders the notice insufficient. The Notice specifically references the Maryland law requirement and does not otherwise suggest that the offer is limited in duration. The Court also rejects that plaintiff's argument that the 1986 notice was not a "com-

mercially reasonable offer outstanding as of July 1989." Pl. Memorandum of Law at 5. The Rhode Island case relied upon by the plaintiff is inapposite because Rhode Island law requires an insurer to include UMC in policies issued *unless* such coverage is rejected by the insured. The Maryland law does not impose such an affirmative duty on insurers, and the Court does not believe that the law was intended to require that notice be sent by insurers with each renewal notice.

limits of the plaintiff's UMC as reflected in her policy at the time of the accident.