632 A.2d 241

Karen A. DANN, F/K/A Karen A. Adams, et al.

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.**

**No. 83, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Nov. 1, 1993.

Certiorari Denied March 9, 1994.

Francis X. Leary (Gerson B. Mehlman and Mehlman & Lax, on the brief), Baltimore, for appellants.

Mark B. McCoy (Robert K. Nead and O'Doherty, Nead, Hoffman & Karey, on the brief), Baltimore, for appellees.

Argued before BISHOP, ALPERT and DAVIS, JJ.

ALPERT, Judge.

Appellants (plaintiffs below) contend that both their automobile insurance company and its agent breached a duty by failing to advise them that they could have obtained higher uninsured/underinsured coverage. The Circuit Court for Baltimore City (Thomas Ward, J.) disagreed, and, apparently finding as a matter of law that no such breach occurred, granted summary judgment in favor of the defendants. Appellants ask us to address a single question:

Whether the trial court erred in granting summary judgment to defendants[,] holding that the defendants had provided plaintiffs with notice of their rights when the undisputed facts showed that plaintiffs had not been provided with notice.

We answer in the affirmative and, therefore, reverse.

## I.

On April 7, 1988, Dennis C. Clark drove the wrong way down an Anne Arundel County exit ramp. As a result, he crashed head-on into a vehicle being driven by Karen A. Dann, appellant, apparently causing her to suffer numerous damages including medical bills, loss of work, pain and suffering, and (with respect ·to the marital relationship with her then husband, appellant Cecil Adams) loss of consortium. (Karen and Cecil, collectively, will be alternatively referred to herein as either "appellants" or as the "insureds.")

At the time of the accident, Karen was insured through the State Farm Mutual Automobile Insurance Company (hereinafter, "State Farm") with policy limits in the following amounts:

| | |
|---|---|
| Liability: | $100,000 per person |
| | $300,000 per accident |
| | $ 50,000 property damage |
| Uninsured/ | |
| Underinsured: | $ 20,000 per person |
| | $ 40,000 per accident |
| | $ 10,000 property damage |

Karen had obtained that insurance policy from the late John L. Russell, a State Farm agent and/or broker, from whom Karen had also obtained a number of other insurance policies not now relevant [1]. Karen's *liability* limits under the policy far exceeded the minimum coverage required under Maryland

---

[1]. Mr. Russell died on October 16, 1989, during the pendency of the underlying (*i.e.*, Adams v. Clark) accident suit. His estate was subsequently named a party defendant in the case *sub judice* and, accordingly, is also an appellee herein.

law; her *uninsured/underinsured* (hereinafter, "U/U") limits, however, merely equated to the lowest level of legal coverage. Md.Ann.Code. art. 48A, § 541(a), (c) (Supp.1992).

Tortfeasor Dennis Clark, on the other hand, was insured by the Maryland Automobile Insurance Fund ("MAIF"). His policy liability limits were considerably lower than Karen's: $20,000 per person, and $40,000 per accident (hereinafter referred to as "20/40" coverage). In fact, Dennis's liability coverage was the lowest allowable under Maryland law. *See* Md.Ann.Code art. 48A, § 541(a) (1991 & Supp.1993). Nevertheless, Dennis's policy *liability* limits were equal to Karen's *U/U* limits—and there, as far as the present litigation is concerned, was the rub.

Under Maryland law, an "uninsured motor vehicle" is defined, in relevant part, as "a motor vehicle whose … use … has resulted in the bodily injury … of an insured, and for which the sum of … all … insurance … is less than the amount of [the other party's U/U] coverage[.]" Md.Ann.Code art. 48A, § 541(c) (1991 & Supp.1993).

In other words, if, in the present case, Dennis Clark's 20/40 liability coverage had been *less* than Karen's U/U coverage, then, to the extent of the difference, Dennis would have been considered as if he were driving an "uninsured motor vehicle" for the purpose of determining the extent of Karen's coverage. In this hypothetical situation, Karen could have availed herself of *her own* (comparably higher) *U/U* limits to recover damages in excess of Dennis's insurance coverage. As things turned out, however, Dennis Clark's 20/40 coverage *equaled* Karen's 20/40 U/U coverage; therefore, Karen was precluded from availing herself of anything other than the 20/40 limits provided for in *Dennis's* liability policy.

Karen eventually ended up settling the accident claim with MAIF for $20,000, *i.e.,* the fullest extent of Dennis's liability coverage [2]. It is significant to note, however, that, had Kar-

---

**2.** Karen contends that MAIF offered its policy limits (*i.e.,* $20,000) to settle the insureds' personal injury claims with Dennis Clark. The

en's own U/U coverage been higher than the statutory minimum, she could have claimed under *that* coverage, and therefore potentially recovered more than just $20,000. Indeed, it is this simple fact that came to form the basis of her claim *sub judice*.

The insureds eventually filed in the Circuit Court for Baltimore City a six-count Complaint against both State Farm and Russell's estate. The Complaint alleged, as its sole factual ground for recovery, that "at no time were [the insureds] advised by [either State Farm or Russell] that uninsured/underinsured motorist coverage of One Hundred Thousand ($100,000) Dollars, or greater amounts, for each accident was available to them."

Based on this ground, and arising largely out of Md.Ann. Code art. 48A, § 541(c)(2) (as then written), the Complaint set forth three independent theories of recovery[3]: (1) breach of statutory duty to inform the insureds of the opportunity to obtain greater coverage, (2) breach of fiduciary duty in the same regard, and (3) reformation of the insurance contract based on appellees' exercise of undue influence. As correctly stated by the insureds, and as implicitly acknowledged by appellees, none of these counts in any fashion alleged that State Farm had breached its *insurance* contract between the parties.

On or about September 25, 1992, appellees filed their Motion for Summary Judgment, in which several defenses were presented to the insureds' Complaint: (1) in releasing Clark from all claims, the insureds breached their insurance con-

---

insureds then sought State Farm's consent to accept this offer, but State Farm allegedly "intentionally, unreasonably and in bad faith refused" to give such consent. The insureds, apparently "in dire need of funds to compensate them for their injuries and losses," accepted the offer anyway. In accepting the funds, the insureds released Mr. Clark from any future claims of any person or agency which might be related to the accident.

**3.** The remaining three counts all concerned the recovery of damages for appellants' loss of consortium, and are therefore not immediately relevant.

tract, and thus the insureds were precluded from recovering any monies related to that contract; (2) an action for breach of fiduciary duty is not viable in a first-party contract claim; and (3) proper notice of the availability of higher coverage had been provided. In their Memorandum in support of this Motion, however, appellees implicitly acknowledged that a genuine dispute as to material facts might in fact exist; the existence of such a dispute, of course, would *defeat* appellees' Motion for Summary Judgment. Md.Rule 2–501.

Specifically, appellees conceded that the insureds' Complaint was grounded in their assertion "that they were never advised or informed of the availability of increased coverage." To contest this point, appellees offered that "in a recorded statement made by State Farm agent Russell, he stated that such information would have assuredly been provided to the plaintiffs." By so stating, appellees have suggested that a material fact (*i.e.,* whether or not the insureds were advised of coverage) may be in dispute.

On November 6, 1992, a hearing on the Motion was held before Judge Ward. At the hearing, appellees simply reiterated the various arguments that appeared in the Memorandum filed in support of their Motion. At the close of the hearing, the Court concluded, without the benefit of additional analysis, as follows:

> I am going to grant the motion for summary judgment. I don't agree with [counsel for the insureds]. Based on the arguments in the file, arguments made here today and the evidence in the file. * * * *
>
> Motion granted. That's all.

The written Order on the Motion also contained no analysis, but instead simply stated that appellees' Motion for Summary Judgment was granted. From that Order, the insureds filed their timely appeal.

## II.

As discussed above, the trial court disposed of this case by way of summary judgment. Maryland Rule 2–501(a) requires

that summary judgment be granted where "there is no genuine dispute as to any material fact and . . . the party is entitled to judgment as a matter of law." At its heart, therefore, this case presents a single, and rather simple issue: does the record below properly indicate both that there was no genuine dispute as to any material fact *and* that appellees were entitled to judgment as a matter of law? *See, e.g., King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985).

■ In resolving this issue, we note that "even where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law." *Porter v. General Boiler Casing Co.,* 284 Md. 402, 413, 396 A.2d 1090 (1979) (quoting *Fenwick Motor Co. v. Fenwick,* 258 Md. 134, 138, 265 A.2d 256 (1970)); *see also King,* 303 Md. at 111, 492 A.2d 608.

Here, as conceded by appellees, the insureds' entire case centered around one single material fact, that is, whether appellees had provided the insureds with notice of their right to obtain higher U/U coverage. At issue is Md.Ann.Code art. 48A, § 541(c)(2) (1979 & Supp.1985), which in pertinent part provides that:

> [E]very policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the injured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. There *shall be available* to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article if those amounts do not exceed the amounts of the motor vehicle liability coverage provided

by the policy.[4]

(emphasis added). The crux of the insureds argument is the failure of appellees to inform them that greater uninsured/underinsured coverage was available.

The trial court resolved this issue against the insureds and essentially held, as a matter of law, that the appellees *had* provided the insureds with notice of these rights. The facts, however, showed that this material fact was clearly in dispute; the insureds contend that they never received such notice, and appellees (allegedly bolstered by Russell's recorded statement) contend that adequate notice was provided. This is a classic example of a dispute as to a material fact that, properly construed, should defeat a motion for summary judgment[5]. The trial court erred by holding otherwise.

Appellees (either collectively, or individually) posit four theories in their attempt to avoid reversal. The essence of each theory is that, irrespective of whether they (either State Farm or Russell) provided the insureds with adequate notice, the insureds would in any event be precluded from any recovery as a matter of law. We discuss, and reject, each theory respectively below.

### 1.

Appellees begin by arguing that, in signing a general release against State Farm's specific request, the insureds breached the contract of insurance with State Farm, thus

---

4. This section has been subsequently amended several times. However, for our case, it is the relevant law since the accident which gave rise to the litigation occurred on April 7, 1988.

5. Moreover, appellees appear to be unsure as to whether Russell's statement would even be properly admissible to support their position in the dispute. By way of footnote, appellees state that "[Russell's] statement was made on July 28, 1988. John Russell died on October 16, 1989. *Defendants would ask that the statement be accepted for consideration by the court.*" (Emphasis added.) The potential inadmissibility of this statement was also noted by counsel for the insureds; as he stated at the hearing on the Motion, Russell's statement appears to be "a blatant hearsay declaration. It's not even that."

relieving State Farm of any duty under the insurance policy. They base this argument on the language contained in the following provision of the insurance contract: **"THERE IS NO COVERAGE:**

**FOR ANY INSURED WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY PERSON OR ORGANIZATION WHO MAY BE LIABLE FOR THE BODILY INJURY OR PROPERTY DAMAGE."** (Boldface in original; italics removed.)

"As a result of [the insureds'] breach of the insurance agreement," appellees argue, "[they] are barred from an action *under their own policy* with State Farm and are not entitled to any coverage *under [that] policy.*"

While appellees' contention may be a correct statement of the law regarding claims made under the policy, it is inapposite to the case *sub judice.* The insureds' claims arise, not out of a claim under their insurance policy, but out of appellees' alleged breach of a completely separate duty imposed by *statute.* Counsel for appellants engaged in the following dialogue with the court in explaining why the summary judgment motion should be defeated:

Count 1 without question and Count 2 without question, and I would argue Count 3 also is pretty clear, are for negligence of the insurance company. This is not an action on the contract. This is not an action ex contractu.

\* \* \* \* \* \*

What we are saying is that State Farm and its agent or through its agent breached their affirmative duty to provide us with the opportunity to obtain higher limits than $20,000 on the uninsured motorist.

\* \* \* \* \* \*

The only issue, the primary issue and really the only significant issue that has to be tried here that's going to be before this Court is whether or not under the Libby case State Farm complied with its duty *under* the statute. The Libby case makes it clear. When the statute says they

should make available, that means that they have to take some action, some affirmative action to offer to their insured higher policy limits on the uninsured motorist coverage up to the limits of their liability coverage.[6]

In this regard, the insureds' compliance (or noncompliance) with the terms of their policy is simply not relevant to the facts at bar. Moreover, appellees have failed to provide any reasons why this case otherwise comes within the province of the insureds' insurance contract.

## 2.

State Farm next argues that, as a matter of law, the insureds have no viable claim based on an alleged breach by State Farm of either a fiduciary or statutory duty. The essence of its argument in this regard is that, pursuant to *Johnson v. Federal Kemper Ins. Co.*, 74 Md.App. 243, 536 A.2d 1211, *cert. denied*, 313 Md. 8, 542 A.2d 844 (1988), Maryland law does not recognize a tort based on either (1) a breach of a fiduciary duty between an insured and an insurer, or (2) a violation of the insurance code. We disagree.

In *Johnson,* appellant Lillie Johnson sued her insurance company for both (1) bad faith failure to pay her insurance claim, and (2) breach of her insurance contract. *Id.,* 74 Md.App. at 245, 536 A.2d 1211. Inasmuch as both of these causes of action directly arose out of the insurance contract between the insured (Johnson) and her insurer, neither cause of action is implicated in the case *sub judice.*

■ Consequently, with respect to the breach of *fiduciary* duty, when (in *Johnson* ) we held that no cause of action existed because "the situation is a traditional dispute between the parties to a contract," *id.* at 247, 536 A.2d 1211, our holding was necessarily limited to those cases (unlike the one at bar) where the cause of action arose directly out of the parties' contract.

---

**6.** Counsel was apparently citing to *Libby v. Government Employees Ins. Co.,* 79 Md.App. 717, 558 A.2d 1236 (1989).

Similarly, with respect to the breach of the *statutory* duty, when (in *Johnson*) we held that no cause of action existed because "nothing in the statute creates a tort action for the insurer's refusal to pay a claim," *id.* at 248, 536 A.2d 1211, our holding was expressly limited to those cases involving the statute then at issue, §§ 230A (unfair claim settlement) and 240B (notice of renewal premium due) of art. 48A. Indeed, as to the existence of a statutory duty, we have previously (and *expressly*) held that an insurer's failure to comply with the mandates of the statute *presently* at issue (*i.e.*, art. 48A, § 541(c)(2)), *can* support a viable cause of action to the benefit of an insured. *See Libby v. Government Employees Ins. Co. [GEICO]*, 79 Md.App. 717, 726–27, 558 A.2d 1236 (1989). Moreover, it is worth noting that *Libby* was filed more than a year *after Johnson*, thereby nullifying any argument as to *Johnson's* persuasive application to the facts at bar.

### 3.

Third, Russell's estate argues that there is no liability on the part of Russell, as he was not a party to the contract and owed no duties to the insureds for which he would be liable in tort. Appellees' arguments in this regard essentially mirror (and, in fact, incorporate by reference those made by State Farm above. Accordingly, we, too, simply adopt by reference (and apply to Russell) the holding set forth in the preceding section of this opinion.

In addition, Russell's estate also argues that Russell "was not a party to the contract [between State Farm and the insureds]," and therefore cannot be held liable under said contract. As we discussed above, however, inasmuch as appellees' causes of action arise not from their insurance contract, but from the alleged breach of a duty imposed by a statute, Russell's status as a non-contracting party is wholly irrelevant [7].

---

7. Since appellees have failed to contend that the obligations set forth in art. 48A, § 541(c)(2), apply only to insurance companies (and not to insurance agents), we need not consider any arguments related thereto.

### 4.

 Finally, apparently grounding their argument in their belief in the truth of Russell's statement, appellees contend that, as a matter of law, State Farm provided adequate notice under Maryland Law by advising the insureds that they had an opportunity to obtain U/U coverage equal to their liability insurance coverage and thus appellees did not violate the statute requiring notice. In support of this contention, appellees argue that "[t]he Court [in *Libby* ] closely reviewed the history of the statute and in its discussion, ... [and] *did not directly require the insure[r] to take any specific actions to notify [the] insureds of their right to contract for higher limits.*" *Libby,* 79 Md.App. at 725, 558 A.2d 1236 (emphasis added).

In *Libby,* we attempted to clarify the scope of Maryland's uninsured motorist statute.[8] *Libby,* 79 Md.App. at 717, 558 A.2d 1236. Judge Bloom, writing for this court, reviewed the history of the Maryland underinsured/uninsured law and also analyzed similar statutes of other states. Since a review of similar statutes would be instructive, we begin by examining the Minnesota statute as undertaken in *Libby. See Minn. Stat. § 65B.49, subd. 6(e) (1977 Supp.) (repealed 1980).* The Court noted that the phrase "make available" was amended for the far more positive "shall offer." The Court went on to observe that the Supreme Court of Minnesota has interpreted the phrase "offer" to mean that

> [the offer] must contain sufficient information to enable the insured to make an intelligent choice and that notice of the option must be given the insured in a commercially reasonable manner. A letter that merely informed the insured that optional underinsured motorist coverage may be pur-

---

**8.** It is important to note that the Maryland statute has since been amended. *See* Md.Ann.Code art. 48A, § 541 (1991 & Supp.1993). The current statute does, however, continue to place the onus upon the insurer by providing uninsured coverage equal to the amount of liability coverage provided under the policy *unless* a waiver is executed by the insured. *Id.* at § 541(g). Thus, the "affirmative duty" policy enunciated in our *Libby* decision is implicitly continued.

chased, without explaining what underinsured motorist insurance means and without indicating that substantial protection could be obtained for only a small additional charge failed to meet the statutory obligation to "offer" the coverage.

*Libby*, 79 Md.App. at 723, 558 A.2d 1236 (citations omitted).

Section 143-1 of the Illinois Insurance Code (1979 Ill.Laws 4771) was analyzed next. The Court noted that the Illinois Appellate Court reviewed and adopted the test as enunciated by the Minnesota Supreme Court. Accordingly, the test in Illinois would be

(1) if the offer is made in other than face to face negotiations, the notification process must be commercially reasonable; (2) the insurer must specify the limits of its optional coverages and not merely offer them in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverages; and (4) the insured must be advised that optional coverages are available for a relatively modest increase in premium.

*Libby*, 79 Md.App. at 724, 558 A.2d 1236.[9] (citing *Tucker v. Country Mutual Ins. Co.*, 125 Ill.App.3d 329, 80 Ill.Dec. 610, 465 N.E.2d 956 (Ill.App. 4 Dist.1984)).

The Court also reviewed the "shall be provided" language of the Tennessee statute, Tenn.Code Ann. § 56–7–1201, as interpreted in *Groover v. Trokell,* 645 S.W.2d 403 (Tenn.App.1982). In that case, the Tennessee Court concluded that

the statute was complied with if the insured knew that uninsured motorist coverage in amounts above the minimum required by law could be purchased at the time of purchas-

---

**9.** Even though the Illinois statute in question has undergone several changes, the Illinois Supreme Court has substantially adopted the four-part test. *See Cloninger v. National General Insurance Co.,* 109 Ill.2d 419, 94 Ill.Dec. 549, 551, 488 N.E.2d 548, 550 (1985); *see also Meadows v. State Farm Mut. Auto. Ins. Co.,* 237 Ill.App.3d 240, 177 Ill.Dec. 940, 945, 603 N.E.2d 1314, 1319 (5 Dist.1992), *cert. denied,* 149 Ill.2d 651, 183 Ill.Dec. 863, 612 N.E.2d 515 (1993) (reaffirming *Cloninger* ).

ing a new policy or renewing an existing one, or at the time of any other policy change.

*Libby,* 79 Md.App. at 724, 558 A.2d 1236.

Following this review of related statutes, the Court in *Libby* noted:

> The Maryland statute which was in effect when the policy in question was issued and which continues in effect until July 1, 1989, unlike the Illinois statute and the amended version of the Minnesota statute, does not require the insurer to *offer* increased underinsured motorist coverage. Indeed, it does not directly require the insurer to take any specific action; it merely provides that there shall be available to the insured an opportunity to obtain such coverage.
>
> * * * * * *
>
> Nevertheless, we believe that an insured who is unaware of an opportunity to obtain increased coverage cannot be said to have that opportunity available to him. We conclude, therefore, that the statute does impose an affirmative duty upon the insurer to notify its insureds that coverage is available.

*Id.* at 725–26, 558 A.2d 1236 (citations omitted).

Here, appellants maintain it is precisely the "affirmative duty" enunciated in *Libby* that is at issue. In fact, throughout the earlier proceedings, they have either implicitly or explicitly stated that appellees have failed to meet this duty and are, therefore, negligent. The Complaint, in Count I, asserts

> That the [appellees] were required and had the duty to inform the insureds [the appellants] of the availability of, and the opportunity to contract for higher uninsured/underinsured motorist limits, up to the amount contracted....
>
> * * * * * *
>
> That as a result of the [appellees'] breach of their duties to the [appellants], the [appellants] did not carry adequate insurance to compensate and cover the losses sustained by the [appellants] as a result of the accident....
>
> * * * * * *

> As a further result of the [appellees'] *negligence*, the [appellants] did not have available to them sufficient insurance coverage....

(emphasis added). During the summary judgment hearing, appellants specifically refuted the contract argument grounds proposed by appellees and stated:

> That's not what we are suing for. We are suing for their negligence. The only issue, the primary issue and really the only significant issue that has to be tried here that's going to be before this court is whether or not under the Libby case State Farm complied with its duty under the statute.

*Libby* is also instructive as to the type of actions that would satisfy the "affirmative duty" required by the statute. The *Libby* Court stated that the "statutory duty is met and that the opportunity to contract for the additional coverage is available if the insurer (1) will issue it upon request and (2) has taken *reasonable steps* to inform its insureds that such coverage is available." *Libby,* 79 Md.App. at 726–27, 558 A.2d 1236 (emphasis added). Thus stated, the issue of whether the appellees took "reasonable steps" to inform the appellants of the availability of additional coverage is a factual issue and should not have been decided by a motion for summary judgment.

In the present case, it seems curious that, throughout the litigation below, the appellees have tried to characterize this case as one based in contract. In fact, appellants in their reply brief state that

> [appellees] continue in their brief their attempt to obfuscate the issues of this case. State Farm and Russell wish to transform [appellants'] tort action into a breach of contract case so that they can avoid liability for breaches of a duty imposed by statute.

We agree. As explained above, appellants' compliance with the terms of the policy is not relevant. Consequently, summary judgment was inappropriately granted.

JUDGMENTS REVERSED, CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO CONDUCT FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.