**OLYMPUS ALUMINUM PRODUCTS, INC., a Minnesota corporation, Plaintiff,**

v.

**KEHM ENTERPRISES, LTD., d/b/a Kehm Electric, Kehm Properties, L.C., and Liberty Bank & Trust, an Iowa corporation, Defendants.**

No. C 96–3056–MWB.

United States District Court, N.D. Iowa, Central Division.

July 9, 1996.

**1300**

David Nelson of the Nelson Law Office, Mason City, Iowa, and Lawrence H. Crosby of Crosby & Associates, Saint Paul, Minnesota, for Plaintiff Olympus.

David Johnson of Brinton, Bordwell & Johnson in Clarion, Iowa, Frank Baron of Baron, Sar, Goodwin, Gill, Lohr & Horak in Sioux City, Iowa, for Kehm Defendants.

Thomas H. Burke and Bernard L. Spaeth, Jr., of Whitfield & Eddy, P.L.C., Des Moines, Iowa, for Defendant Liberty Bank & Trust.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION .......................................................... 1301
 A. Procedural Background ............................................ 1301
 B. Findings Of Fact ................................................. 1303
II. LEGAL ANALYSIS ...................................................... 1304
 A. Standards For Declaratory Judgments ............................. 1304
 1. "Case or controversy" ....................................... 1304
 2. "Standing" .................................................. 1304
 3. Discretion .................................................. 1304
 B. The Statutory Maze .............................................. 1308
 1. Interpretation of state law by federal courts ............... 1310
 2. Rules of statutory interpretation ........................... 1311
 3. Interpretation of the statutes involved ..................... 1313
 C. Relief .......................................................... 1316
III. CONCLUSION ......................................................... 1316

With nearly as much trepidation as Theseus must have felt entering the Labyrinth of the Minotaur,[1] this federal court enters a maze created by state statutes unenlightened by any applicable decisions of the state's highest courts. The court is asked to decide a question of first impression, whether the holder of a mechanic's lien who had not reduced his lien to judgment could properly redeem real property under Iowa's alternative voluntary non-judicial foreclosure procedure. The declaratory plaintiff is leasing certain real property for its manufacturing plant and fears ejection by a party who redeemed the property in voluntary non-judicial foreclosure proceedings. Because the redeeming party had only a mechanic's lien that had not been reduced to judgment against the real property, the declaratory plaintiff asserts the redemption is barred by statute. The plaintiff's argument is based on Iowa Code § 628.6, which states that a mechanic's lien before judgment thereon is not of such character as to entitle the holder to redeem. On the strength of this statute, the plaintiff asks the court to undo the redemption as the product of mistake or inadvertence. The redeeming party and the bank that permitted the redemption contend that there was no mistake, and that the redemption was proper. They argue that the statutory provision cited by the plaintiff simply does not apply to non-judicial foreclosures. Instead, they assert that the redemption was

---

**1.** The Labyrinth, a supposedly inescapable maze, was created for Minos, the king of Crete, to house the half-human, half-bull Minotaur, the offspring of the king's wife after an extra-marital affair with a bull. Poseidon, god of the sea, enflamed the king's wife, Pasiphae, to passion for a bull in retribution for King Minos's sacrifice of the wrong bull to the god. The Minotaur was fed Athenian youths who were sent to Crete as tribute and who had been placed in the Labyrinth to wander until the Minotaur found them. Theseus, son of the king of Athens, Aegeus, volunteered to accompany such a group of youths into the maze so that he could kill the Minotaur and free Athens from Crete's sway. *See, e.g., Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend* 598, 729 (Maria Leach, ed., Funk & Wagnalls, 1972); Thomas Bullfinch, *Bullfinch's Mythology* 152–53 (Crowell, 1834; reprinted, Harper & Row, 1970).

controlled by Iowa Code §§ 654.18 and 628.29, which provide for redemption in non-judicial foreclosures by any "lienholder of record." The court cannot retreat from the maze created by these statutes, as Theseus retreated from the Labyrinth, by following a thread unraveled from its robe.[2] Instead, the court must interpret the statutory provisions creating the maze in such a way that legislative intent is served and the interplay of the statutes clarified.

## I. INTRODUCTION

### A. Procedural Background

Plaintiff Olympus Aluminum Products, Inc., a Minnesota corporation with its principal place of business in Eden Prairie, Minnesota, filed a complaint for declaratory judgment, temporary restraining order (TRO), and temporary injunction on June 14, 1996. The defendants are Kehm Enterprises, Ltd., d/b/a Kehm Electric, and Kehm Properties, L.C. (collectively, "Kehm"), and Liberty Bank & Trust ("Liberty"), an Iowa corporation with its principal place of business in Mason City, Iowa. At the center of this dispute are two outlots in an industrial park in Mason City, including the building thereon, currently occupied by Olympus and used by it as its manufacturing facility for aluminum windows, doors, and other products. Kehm had redeemed the real property from Liberty in the course of voluntary non-judicial foreclosure proceedings of a mortgage against the previous owner of the property, Alpana Aluminum Products, Inc. Olympus asserts that Kehm's redemption is the product of mistake or inadvertence, and therefore must be undone by the court in these proceedings.

Olympus's complaint sought three kinds of relief: first, a TRO restraining Kehm from conveying or encumbering the premises in question; second, a declaration and order that Kehm, through the mechanic's lien it held on the real property in question, did not have a lien of sufficient character to entitle it to redeem the real property from Liberty in non-judicial foreclosure proceedings; and, third, an order to Kehm to provide a Special Warranty Deed for the real property back to Liberty. The complaint asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332 and venue pursuant to 28 U.S.C. § 1391(a).

Following preliminary proceedings, and upon agreement of the parties, the court issued a TRO on June 18, 1996. The TRO enjoined defendants from transferring, encumbering, assigning, pledging, trading to any person, known or unknown, or engaging in any other method or fashion or transaction that would affect the right, title and interests as well as possession of the premises in question.[3] The court ordered that the TRO would issue upon the giving of security of $20,000 by Olympus, which security was posted on June 21, 1996. The parties requested an expedited trial on the merits of this action, and the court set aside July 1, 1996, for such a trial in Fort Dodge, Iowa. Consequently, in the TRO, the court also ordered that the issuance of the TRO and the amount of the bond would be subject to review upon written motion of the defendants if this matter did not proceed to trial on the merits on July 1, 1996, owing to a cause not attributable to defendants. The court further ordered that the TRO would remain in full force and effect until further order of this court.

This matter did proceed to hearing on July 1, 1996, in Fort Dodge, Iowa. At that hearing, plaintiff Olympus was represented by counsel David Nelson of the Nelson Law Office in Mason City, Iowa, and Lawrence H. Crosby of Crosby & Associates in Saint Paul, Minnesota. The Kehm defendants were represented by David Johnson of Brinton, Bord-

**2.** After killing the Minotaur with his bare fists, Theseus escaped the inescapable maze by following the thread he had tied to the gates of the Labyrinth, and had unraveled as he walked, back to the entrance. Theseus, brave though he was, had not thought up this solution to the maze, which was instead suggested to him by Ariadne, King Minos's daughter, who had been stricken with love for the young Athenian hero. *See, e.g.,* *Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend,* at 598; *Bullfinch's Mythology* at 152–53.

**3.** Although the Complaint sought to enjoin the Cerro Gordo County Recorder from recording any conveyance or encumbrance, the County Recorder was not named as a defendant, and the court declined to enjoin that non-party.

well & Johnson in Clarion, Iowa, and Frank Baron of Baron, Sar, Goodwin, Gill, Lohr & Horak in Sioux City, Iowa. Defendant Liberty Bank & Trust, which had not appeared in preliminary proceedings, but had consented to the issuance of a TRO, appeared at the July 1, 1996, hearing through counsel Thomas H. Burke and Bernard L. Spaeth, Jr., of Whitfield & Eddy, P.L.C., in Des Moines, Iowa. At the hearing on July 1, 1996, the parties consented, on the record, to the consolidation of the trial of the action on the merits with the action for a preliminary injunction, pursuant to *Fed.R.Civ.P.* 65(a)(2).

In the interim between issuance of the TRO and the consolidated hearing and trial on the merits, all defendants answered the complaint for declaratory judgment and injunctive relief. Kehm answered the complaint on June 24, 1996, and filed an amended answer on June 26, 1996.[4] Liberty answered the complaint on June 28, 1996. The positions of the parties were further clarified by pre-trial briefs filed by Kehm, on June 28, 1996, and by Olympus just prior to the trial on July 1, 1996.

At the hearing, Olympus presented various exhibits and the testimony of two witnesses. The first witness was Mr. Randall Arlan Hamborg, the Executive Vice President of Olympus. The second witness was J. Mathew Anderson, an attorney from Mason City who had represented Liberty in the course of the non-judicial foreclosure proceedings. Kehm also presented exhibits and the testimony of one witness, Mr. Theodore Kehm. Liberty presented no evidence or exhibits, although it participated in cross-examination of the witnesses of the other parties. Counsel for all parties also participated in closing arguments. At the conclusion of the trial on the merits, the court granted the parties leave to keep the record open for certain documents to which Mr. Kehm had referred in his testimony and such related evidence as Olympus might then desire to present. In a telephone conference held on July 3, 1996, the parties agreed to admission of certain exhibits proffered by Kehm, an affidavit of Theodore Kehm pertaining to those exhibits, and a report to the court on stipulations concerning the exhibits. Olympus indicated that it did not need to make any further submissions in response to the additions to the record. The parties therefore agreed that the evidentiary record would close with Kehm's submissions.

At the hearing on July 1, 1996, the court also granted the defendants until 5:00 p.m. on Friday, July 5, 1996, to fax post-trial briefs to the court, and granted plaintiff until 5:00 p.m. on Monday, July 8, 1996, to fax any reply brief to the court. All briefs were to be properly filed with the Clerk of Court by mail as soon thereafter as possible.

In response to the court's leave to file further post-trial briefs, Liberty faxed a post-trial brief to the court on July 3, 1996. Liberty's brief addresses interpretation of the foreclosure and redemption statutes at issue. In it, Liberty contends that even though Kehm's mechanic's lien has never been reduced to judgment, such a reduction to judgment was not required for Kehm to redeem in non-judicial foreclosure proceedings. Liberty acknowledges that reduction to judgment is, and can reasonably be, required for redemption in the course of judicial foreclosure proceedings, but asserts that such reduction to judgment is not practical in the expedited non-judicial foreclosure proceedings. Also in response to the court's leave, Kehm faxed the court a copy of its post-trial brief on July 5, 1996.[5] Kehm's brief specifically addresses an issue raised by Olympus at trial, which was whether Kehm's mechanic's lien was even valid. Kehm's brief also very briefly asserts that a mechanic's lien need not be reduced to judgment in order for the holder to redeem property in non-judicial foreclosure proceedings. The final brief filed in this matter was Olympus's reply brief, faxed to the court on July 8, 1996. It renews Olympus's attack on the validity of Kehm's lien and asserts the applicability of § 628.6 to non-judicial foreclosure actions.

This matter is now fully submitted. Because of the parties' positions, the consequences to them, and their request for an

---

4. The amendments to Kehm's answer are typographical.

5. Kehm's brief was filed with the Clerk of Court on July 8, 1996.

expedited ruling, the court must move with speed, although not with haste.

### B. Findings Of Fact

Although the court's statement of the factual background in its memorandum opinion accompanying its TRO was assertedly preliminary, the court finds that admissions of the defendants in their answers and the evidence offered at the trial differ in few significant respects from the court's prior recitation. On March 8, 1996, Olympus entered into what it described as a "workout agreement" with Liberty concerning a property at 1453 South Benjamin Avenue in Mason City, Iowa,[6] formerly owned by Alpana Aluminum Products, Inc. This real property had been used by Alpana as a manufacturing facility for aluminum windows and other products.[7] It will therefore be referred to hereinafter as the Alpana Property. In addition to the Alpana Property, Olympus agreed to purchase the majority of the assets of Alpana and to assume certain of Alpana's obligations. Under the agreement, Olympus was to pay $1,477,000 for the Alpana Property and other of Alpana's assets. Under a separate agreement, Olympus was entitled to lease the Alpana Property until the purchase of the real property could be effected. Pursuant to the "work-out agreement," submitted as Plaintiff's Exhibit B at the trial, and the lease agreement with Liberty, Olympus took possession of the Alpana Property, where it began producing windows and other products. Olympus also began paying Liberty $10,000 per month to lease the Alpana Property as prescribed in the lease agreement between those parties.

The so-called "work-out agreement" also contemplated that Liberty would foreclose the mortgage on the Alpana Property that Liberty held from Alpana so that the real property could eventually be conveyed to Olympus. Alpana and Liberty agreed to foreclose the mortgage pursuant to the alternative voluntary non-judicial foreclosure procedure established in Iowa Code § 654.18.

On April 9, 1996, Liberty therefore filed its election of "alternative voluntary foreclosure" pursuant to Iowa Code § 654.18 with the Cerro Gordo County Recorder seeking to foreclose its mortgage on the Alpana Property against Alpana. On April 12, 1996, Liberty served on various holders of liens against the Alpana Property a "Notice of Election to Foreclose Pursuant to the Alternative Voluntary Foreclosure Procedure Provided for in Section 654.16 [sic] of the Code of Iowa." Plaintiff's Exhibit I. Kehm received such a notice.

Kehm Electric had filed a mechanic's lien against the Alpana Property on October 16, 1995, claiming it was owed $8,614.18 by Alpana. Plaintiff's Exhibit J. There was some dispute at trial as to whether the amounts claimed in this mechanic's lien were incurred while Kehm was acting as a subcontractor in the construction of the Alpana building or as a primary electrical contractor working directly for Alpana. The court finds from the testimony of Theodore Kehm and from the supporting documents for the lien, which are invoices directly to Alpana rather than to the general contractor, that Kehm's mechanic's lien is for work done as a primary electrical contractor for Alpana after Kehm obtained permission of the general contractor on the construction project to do some work directly for Alpana. Kehm's mechanic's lien, however, has never been reduced to judgment.

Mr. Anderson, Liberty's attorney during the foreclosure process, testified that he sent a notice of the election of voluntary non-judicial foreclosure to Kehm, because Kehm's lien had appeared in a lien search he conducted for Liberty prior to sending the notice. He testified that at the time he sent the notice, he believed Kehm was entitled to notice of the foreclosure simply by virtue of having a lien of record. He testified that he did not check to see if Kehm's lien had been reduced to judgment.

6. The real property in question here is legally described as outlots A and B in industrial park third addition, Mason City, Cerro Gordo County, Iowa.

7. The unrebutted evidence presented at trial is that there are no common shareholders, officers, or directors between Alpana and Olympus. However, Olympus has rehired a number of former Alpana employees, finding that they provided an experienced workforce for its own operations. Olympus has also purchased the right to use the Alpana name on certain products.

The notice served by Liberty on Kehm and other lienholders indicated that any of them could redeem the Alpana Property within thirty days of April 12, 1996, by paying the sum of $516,183.28 due as of April 12, 1996, plus interest and costs accrued thereafter. On or about May 9, 1996, Kehm Electric paid the required sum to redeem the Alpana Property and Liberty delivered to Kehm Electric a Special Warranty Deed for the Alpana Property.[8] Kehm Electric recorded its Special Warranty Deed on or about May 9, 1996. Thereafter, Liberty was presented with arguments from Olympus that Kehm Electric was not entitled to redeem. Liberty therefore made a demand upon Kehm Electric for the return of the Special Warranty Deed and offered to tender back the sum Kehm Electric had paid to redeem the property. *See* Plaintiff's Exhibit L. Kehm Electric has thus far refused to return the Special Warranty Deed to Liberty. Instead, on or about May 17, 1996, Kehm Enterprises, Ltd., d/b/a Kehm Electric, conveyed the Alpana Property to Kehm Properties, L.C., a corporation that had filed articles of incorporation that day. In the proceedings before this court, Liberty did not reassert this demand that Kehm reconvey the Alpana Property to it. Instead, Liberty took the position that the redemption had been proper and should stand.

Olympus asserts that the real property in question has a fair market value in excess of $1,500,000 and that it is unique in design and facilities for the production of windows such as Olympus produces. Kehm paid something over half a million dollars to redeem this real property. There is insufficient evidence for the court to make a determination of the fair market value of the property, and the court finds it unnecessary to do so to resolve any issues in this dispute. However, the parties do not dispute that both Olympus's negotiated purchase price for the Alpana Property under the so-called "work-out agreement" and Kehm's redemption cost were "opportunities" to obtain the property

at some significant discount. Nonetheless, Mr. Kehm testified that he had redeemed the property because he viewed redemption as the only way to protect his lien or to recover moneys owed his company by Alpana, rather than because he saw an opportunity to obtain the property at a discount.

Following redemption of the Alpana Property, Olympus asserted, and Kehm did not dispute, that Kehm demanded that Olympus vacate the property in question or enter into a lease with Kehm Electric. Neither Olympus nor Kehm offered or otherwise sought to negotiate specific terms of any lease. Instead, Olympus filed this declaratory judgment action.

## II. LEGAL ANALYSIS

### (including some further findings of fact)

### A. Standards For Declaratory Judgments

 The present action is one for declaratory judgment. Congress has provided for declaratory judgments by the federal courts through two provisions of the Declaratory Judgment Act, which state, in pertinent part, the following:

§ 2201. Creation of remedy

(a) In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

* * * * * *

§ 2202. Further relief

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

---

8. The record indicates that there is some dispute between Kehm and Liberty as to what sum was required to redeem the Alpana Property, although Kehm paid the sum demanded by Liberty. The court finds that Kehm paid the sum of $564,431.70 to redeem the Alpana Property, but

the court concludes that neither the exact sum actually paid to redeem the Alpana Property nor the sum that properly should have been required is material to any determination it must make here.

28 U.S.C. §§ 2201(a), 2202. " 'The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action.' " *Horne v. Firemen's Retirement Sys. of St. Louis,* 69 F.3d 233, 236 (8th Cir.1995) (quoting *United States v. Fisher–Otis Co.,* 496 F.2d 1146, 1151 (10th Cir.1974)). However, "[t]he case or controversy requirement of Article III applies with equal force to actions for declaratory judgment as it does to actions seeking traditional ... relief." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Foster v. Center Township of La Porte County,* 798 F.2d 237, 242 (7th Cir.1986)).

### 1. "Case or controversy"

■ The test recognized by the Eighth Circuit Court of Appeals as applicable to the question of whether there is an actual "case or controversy" for an action under the Declaratory Judgment Act is "whether 'there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Id.* (quoting *Caldwell v. Gurley Refining Co.,* 755 F.2d 645 (8th Cir.1985), in turn citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941)); *see also Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (same test). Because "substantial controversy" is "imprecise," the Eighth Circuit Court of Appeals has clarified that the decision of whether such a controversy exists is to be made upon the facts on a case-by-case basis. *Id.* (citing *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969)). In order to be "substantial," the controversy "must be live throughout the course of the litigation and must exist at the time of the district court's hearing of the matter and not simply when the case is filed." *Id.*

■ Here, the court finds that the three requirements for prosecution of the present declaratory judgment action have been met. The controversy, involving whether Kehm has properly redeemed the Alpana Property, is "live," and therefore "substantial." *Id.*

Until the controversy is resolved, no party will have quiet title to the Alpana Property and uncertainties about Olympus's ability to continue operations from the Mason City location will undermine its ability to fill present orders, bid on new contracts, or attract new business or investment. The parties to this declaratory judgment action, Olympus, on the one hand, and Kehm and the Bank, on the other, are "adverse," in that they seek diametrically opposed answers to the question upon which this court's declaration is sought, and the benefits of the decision will flow to one side or the other depending upon this court's conclusions. *Id.* Finally, there is "sufficient immediacy and reality" about the controversy to warrant relief, *id.,* because there is no indication that Kehm intends, voluntarily, to relinquish its Special Warranty Deed to the Alpana Property and to accept Liberty's offer to return its redemption funds. Nor is it altogether certain, based on Liberty's present assertion that the redemption was proper, that Liberty would still accept such a return to the status quo ante. Thus, Olympus does face the specter of continued uncertainty about its ability to continue production at the Mason City location, and a "live" controversy is presented.

### 2. "Standing"

■ Although defendants have not specifically challenged the present declaratory judgment action on "case or controversy" grounds, they have challenged Olympus's standing to complain about the redemption, as Olympus was neither the debtor nor creditor on the mortgage, nor a junior lienholder. The Eighth Circuit Court of Appeals recently observed that "standing" is one of several doctrines flowing from the "bedrock requirement" of Article III's "case or controversy" requirement. *Mausolf v. Babbitt,* 85 F.3d 1295, 1300 (8th Cir.1996) (observing further that "Article III's standing requirement is a restraint on the 'judicial power' as unyielding as that placed on Congress by, for example, the First Amendment."). The court, in its consideration of whether the "standing" requirement was applicable to intervenors, observed, "In our view, an Article III case or controversy, once joined by intervenors who lack standing, is—put bluntly—no longer an Article III case or controversy." *Id.* at 1300.

This court suspects that the court of appeals would look equally askance at a "case or controversy" asserted by an original party without standing. Therefore, although the "case or controversy" and "standing" inquiries arise from a common source in constitutional bedrock, and are closely related, as shall be seen below, the court will also consider separately whether Olympus has "standing" to pursue this declaratory judgment action.

■ "The Supreme Court has often emphasized that a lawsuit in federal court is not a forum for the airing of interested onlookers' concerns, nor an arena for public-policy debates." *Id.* (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982)). Instead, a would-be litigant must satisfy a three-part test established in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). *Id.* The Eighth Circuit Court of Appeals described that test as follows:

> First, the would-be litigant must have suffered an "injury in fact"; that is, an "invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical...." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136 (internal quotation marks and citations omitted). Second, the would-be litigant must establish a causal connection between the alleged injury and the conduct being challenged. *Ibid.* Third, he must show that the injury is likely to be redressed by a favorable decision. *Id.* at 561, 112 S.Ct. at 2137; *see Friends of the Boundary Waters Wilderness v. Thomas,* 53 F.3d 881, 886 (8th Cir.1995) (standing requires (1) injury in fact, (2) causation, and (3) redressability).

*Mausolf,* 85 F.3d at 1301. The court finds these "standing" requirements have been met in this case.

■ First, the injuries of which Olympus complains are "imminent and direct, not hypothetical or fantastic." *Id.* at 1301. Olympus has a legally protected interest in its lease of the real property in question that is being subjected to an invasion that is concrete and particularized and actual or imminent. *Id.* Olympus is being threatened with ejection from the premises it is leasing as the result of Kehm's demand that Olympus enter into a lease or vacate the premises. Next, there can be little doubt of the causal connection between this threatened injury and Kehm's allegedly improper redemption of the property in question. *Id.* at 1300–01. But for Kehm's redemption of the Alpana Property, there would be no potential invasion by Kehm on Olympus's occupancy of the Alpana Property. Finally, Olympus's threatened injury will be redressed if title is quieted in Liberty by undoing Kehm's redemption. Olympus's purchase agreement will then be able to go forward, but even if it doesn't, at the very least, Olympus will be able to continue occupying the Alpana Property without fear of immediate ejection.

### 3. Discretion

■ Having determined that this declaratory judgment action involves an actual "case or controversy," and that Olympus has "standing" to pursue this cause of action, the court must still determine whether to exercise its discretion to hear this case. The Declaratory Judgment Act confers "'unique and substantial discretion'" upon federal courts, including discretion whether to entertain, stay, or dismiss the action. *Id.* (quoting *Wilton v. Seven Falls Co.,* — U.S. —, — – —, 115 S.Ct. 2137, 2139 & 2144, 132 L.Ed.2d 214 (1995)); *International Ass'n of Entrepreneurs of Am. v. Angoff,* 58 F.3d 1266, 1270 (8th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 774, 133 L.Ed.2d 726 (1996); *BASF Corp. v. Symington,* 50 F.3d 555, 557 (8th Cir.1995); *Employers Ins. of Wausau v. Missouri Elec. Works, Inc.,* 23 F.3d 1372, 1374 (8th Cir.1994) (noting that "[a] district court is not obligated to exercise jurisdiction in a diversity case brought under the Declaratory Judgment Act, citing *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), and discussing grounds for abstaining from considering such an action).[9] For example,

> the Declaratory Judgment Act is not to be used either for tactical advantage by liti-

9. No party has suggested that this court should abstain from hearing this action, so the court will not discuss here the various grounds for abstention from a declaratory judgment action. Suffice

gants or to open a new portal of entry to federal court for suits that are essentially defensive or reactive to state actions. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 n. 20, 103 S.Ct. 927, 937 [n. 20], 74 L.Ed.2d 765 (1983); *BASF [Corp. v. Symington]*, 50 F.3d [555,] 558 [ (8th Cir.1995) ] (citing cases); *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1372–73 (9th Cir.1991); *Omaha Property [and Cas. Ins. Co. v. Johnson]*, 923 F.2d [446,] 448 [ (6th Cir. 1991) ]; *Continental Airlines [v. Goodyear Tire & Rubber Co.]*, 819 F.2d [1519,] 1524 [ (9th Cir.1987) ]; *Transamerica [Occidental Life Ins. Co. v. DiGregorio]*, 811 F.2d [1249,] 1253 [ (9th Cir.1987) ]; *Home Fed. Sav. and Loan Ass'n v. Ins. Dept. of Iowa*, 571 F.2d 423, 427 (8th Cir.1978) . . . .

More specifically, the Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action. *Franchise Tax Bd. [of Calif. v. Constr. Laborers Vacation Trust for S. Calif.]*, 463

it to say that, although the court's decision to exercise jurisdiction is discretionary, that "does not mean that the decision to abstain can be made 'as a matter of whim or personal disinclination.' " *United States Fidelity and Guaranty Co. v. Murphy Oil USA, Inc.*, 21 F.3d 259, 261 (8th Cir.1994) (quoting *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962) (*per curiam* )).

10. Local Rule of the United States District Court for the Northern District of Iowa 23 provides that:

> When there is involved in any proceeding a question of law of a state which may be determinative of the cause then pending in this court and as to which it appears there is no controlling precedent in the decisions of the appellate courts of the state, a motion may be made to certify the question of law to the highest appellate court of the state. This court, on such motion or on its own motion, may certify such question to the appropriate court, if authorized by state or rule.

The Iowa Code provides that:

> The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions

U.S. [1,] 16, 103 S.Ct. [2841] at 2849–50 [77 L.Ed.2d 420] [ (1983) ] (discussing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)); *BASF*, 50 F.3d at 558. In addition, the Declaratory Judgment Act is not meant to expand federal jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 15–16, 103 S.Ct. at 2849–50; *Home Federal*, 571 F.2d at 427 n. 17.

*Angoff*, 58 F.3d at 1270. The court finds none of these misuses of the Declaratory Judgment Act here. Instead, the court finds a legitimate action, as the Act provides, "to declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a).

▇▇▇▇▇ Nonetheless, the court recognizes that the purely state-law question presented here as a question of first impression might more properly be considered by the Iowa Supreme Court. Indeed, were the circumstances otherwise than as presented here, the court would be inclined to certify the question with which it must grapple to the Iowa Supreme Court pursuant to N.D.Ia. LR 23 and Iowa Code § 684A.1.[10] *See, e.g., Em-*

> of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

Iowa Code § 684A.1 (1993).

Whether a federal district court should certify a question of state law to the state's highest court is a matter "committed to the discretion of the district court." *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881–82 (8th Cir.1996) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974)); *Packett v. Stenberg*, 969 F.2d 721, 726 (8th Cir.1992) (also citing *Lehman Bros.*). A court may consider the following factors in determining whether to certify a question to the state supreme court: (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Rowson v. Kawasaki Heavy Indus., Ltd.*, 866 F.Supp. 1221, 1225 & n. 5 (N.D.Iowa 1994) (citing *L. Cohen & Co. v. Dun & Bradstreet, Inc.*, 629 F.Supp. 1419, 1423–24 (D.Conn.1986)).

ployers Ass'n, Inc. v. United Steelworkers of Am., AFL–CIO–CLC, 19 F.3d 405, 408 (8th Cir.1994) (observing that, in the absence of an interpretation of state law by the state's high court, "the most prudent course is to await a definitive interpretation by [the state's] highest court," at least when the question is actually pending before the state court), opinion vacated, 23 F.3d 214 (8th Cir.1994) (the prior opinion was vacated upon discovery by the court of appeals that the Minnesota Supreme Court had in fact ruled upon the question thought to be one of first impression just prior to the handing down of the federal appellate court's decision). However, no party has requested certification of the question to the Iowa Supreme Court. Furthermore, it appears unlikely that the question will be presented to the Iowa Supreme Court in the near future, since that court has not been presented with the question in the decade or more since alternative non-judicial foreclosure was enacted in Iowa. Finally, the parties have asserted their desire for a prompt resolution of this question by this court. *Compare Hegg v. United States,* 817 F.2d 1328, 1330 (8th Cir.1987) (both parties urged the court to decide a question of first impression under state law without certification to the Iowa Supreme Court, and the court properly did so). The court will therefore proceed to its disposition of the question presented.[11]

### B. The Statutory Maze

The question presented by this declaratory judgment action, once again, is, can the holder of a mechanic's lien who had not reduced his lien to judgment properly redeem real property under Iowa's alternative voluntary non-judicial foreclosure procedure? Plaintiff's argument that the answer to this question should be "no" centers upon Iowa Code § 628.6. The provision of the Iowa Code states, in its entirety, that "[a] mechanic's lien before judgment thereon is not of such character as to entitle the holder to redeem." Neither the parties nor the court have found any decision of the Iowa Supreme Court or

Iowa Court of Appeals interpreting this statutory provision in ·a way relevant to the present proceedings. However, because it is undisputed that Kehm had not reduced its mechanic's lien to judgment prior to redemption, Olympus argues that Kehm's redemption was improper under the plain terms of this statute. Therefore, Olympus argues Kehm's redemption must be undone to return the parties to the status quo ante.

Defendants counter that § 628.6, although applicable to redemption in the context of judicial foreclosures, is inapplicable to redemptions after non-judicial foreclosures. Defendants contend instead that the only applicable redemption provision is Iowa Code § 628.29. That statutory provision states,

> A lienholder of record may redeem real property which has been foreclosed by a mortgagee pursuant to the alternative voluntary foreclosure procedure provided in section 654.18. The junior lienholders' redemption period shall be thirty days commencing the day the notice required by section 654.18, subsection 1, paragraph *"e"* is sent. The redemption shall be made by payment to the mortgagee of the amount of the debt secured by the mortgage including any protective advances made pursuant to chapter 629. Upon payment, the mortgagee shall convey the property by special warranty deed to the redeeming junior lienholder.

Iowa Code § 628.29. This provision specifically states that it applies to alternative non-judicial foreclosure under Iowa Code § 654.18. Furthermore, § 654.18 cross-references § 628.29 as the applicable redemption statute:

> 2. A junior lienholder may redeem the real property pursuant to section 628.29. If a junior lienholder fails to redeem its lien as provided in subsection 1, its lien shall be removed from the property.

Iowa Code § 654.18(2). Neither provision concerning alternative non-judicial foreclosure cross-references § 628.6 and that

---

11. A district court's grant of declaratory judgment is reviewed for abuse of discretion. *Morrison v. Mahaska Bottling Co.,* 39 F.3d 839, 846 (8th Cir.1994); *Century Indem. Co. v. McGillacuty's, Inc.,* 820 F.2d 269, 270 (8th Cir.1987) ("regular abuse of discretion standard applies when district court has granted declaratory relief," citing *Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 167 nn. 9 & 10 (3d Cir.1982)).

statute does not state the forms of foreclosure to which its limitation on redemption by a holder of a mechanic's lien applies.

Liberty and Kehm assert that the foreclosure procedures stated in Iowa Code § 654.18 and the redemption procedures stated in Iowa Code § 628.29 were followed to the letter in this case, and therefore the redemption must stand. Specifically, they contend that, whether or not Kehm had reduced its mechanic's lien to judgment, Kehm was a "lienholder of record," thus meeting the only qualification to redeem the Alpana Property in voluntary non-judicial foreclosure. When Kehm, as a "lienholder of record," appeared to redeem the Alpana Property, they argue, Liberty was required by the last sentence of Iowa Code § 628.29 to convey the property to Kehm by special warranty deed. Therefore, they contend, Liberty properly gave Kehm a special warranty deed for the Alpana Property in this case.

Just as no Iowa decisions interpret Iowa Code § 628.6 in a meaningful way for the present dispute, neither the parties nor the court have found any Iowa decisions interpreting Iowa Code § 628.29 or Iowa Code § 654.18 addressing the interplay of these statutes with § 628.6. The provision of the Iowa Code upon which Olympus relies, § 628.6, is of venerable provenance. A comparable provision of the Iowa Code was in place at least as long ago as 1879. In that year, the Iowa Supreme Court cited a provision of the Iowa Code that also stated "a mechanic's lien, before judgment thereon, is not of such a character as to entitle the holder to redeem." *Spink v. McCall*, 52 Iowa 432, 3 N.W. 471 (1879). By contrast, the provisions of the Iowa Code upon which the defendants rely, Iowa Code §§ 628.29 and 654.18, became part of the Iowa Code only comparatively recently. Both were enacted in 1985 as part of S.F. 577, 85 Acts, ch. 252, and both were codified in the 1987 Code in their present locations. *See Black v. First Interstate Bank*, 439 N.W.2d 647, 650 (Iowa 1989). Thus, with the enactment of the "Alternative Non-judicial Voluntary Foreclosure Procedure," as an amendment to Chapter 654, Chapter 628 was also amended to include Iowa Code § 628.29, which was designed to "tailor the redemption rights of debtors and other lienholders to fit this new foreclosure procedure." *Id.* Neither of these later provisions mention the pre-existing rule stated in Iowa Code § 628.6. However, § 628.6 was not amended with the enactment of "Alternative Non-Judicial Voluntary Foreclosure" to limit or eliminate its applicability to the new foreclosure procedure.

The dispute in this case thus centers on whether Iowa Code § 628.6 is applicable to voluntary non-judicial foreclosure. If it is applicable, then Kehm could not properly have redeemed the Alpana Property, and Kehm's redemption must be undone as the result of mistake or inadvertence. If, however, § 628.6 is not applicable, then, pursuant to § 628.29, it appears that Kehm's redemption was proper and must stand.

In its post-trial brief, Liberty asserts that Olympus's argument that § 628.6 bars redemption in non-judicial foreclosure proceedings by the holder of a mechanic's lien who had not reduced the lien to judgment is specious. Liberty argues that "[i]t clearly was not the intent of the Iowa legislature to incorporate § 628.6 into the alternative voluntary foreclosure proceeding," apparently because the legislature specifically enacted a separate redemption statute for voluntary foreclosure, § 628.29. Memorandum Brief of Defendant Liberty Bank & Trust of Mason City, p. 14. Liberty contends that application of § 628.6 to voluntary non-judicial foreclosure proceedings would frustrate the purpose of alternative foreclosure, which Liberty opines is the speedy and efficient foreclosure of a senior lien or mortgage by agreement of the debtor and creditor, because § 628.6 would somehow interfere with the interplay between § 654.18, the alternative foreclosure statute, and § 628.29, the applicable redemption statute. Liberty also argues that § 628.29, because it is specifically tailored to alternative foreclosure, takes precedence over what it characterizes as the "general" statute, § 628.6. Kehm concurs in this analysis of the interplay of the statutes in its post-trial brief, contending further that the evidence demonstrates that Kehm's mechanic's lien was valid, whether reduced to judgment or not, such that it was entitled to redeem the Alpana Property. In its reply

brief, Olympus contends that Kehm never obtained a valid lien, that if valid, Kehm's lien was not of such character to redeem under the common law, judicial foreclosure, and, by extension, non-judicial foreclosure, and that the legislature never intended to preclude the effect of § 628.6 upon non-judicial foreclosure, because it never stated that intention.

To decide the question presented here, it is readily apparent from the arguments of the parties that the court must first discover the applicable rules of statutory interpretation.

### 1. Interpretation of state law by federal courts

■ Federal courts must often interpret state law in diversity actions, and sometimes, as here, those determinations are on questions of first impression. A federal court is bound by the interpretation of a state's statutes by the state's highest court. *Missouri v. Hunter,* 459 U.S. 359, 366–68, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983); *Rhode v. Olk–Long,* 84 F.3d 284, 290 (8th Cir.1996); *Employers Ass'n, Inc.,* 19 F.3d at 408 (" '[W]e are of course bound by a State's interpretation of its own statute ...,' " quoting *Garner v. Louisiana,* 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961)); *Becker v. Lockhart,* 971 F.2d 172, 174 (8th Cir.1992) (noting that state courts may give the terms of a state statute "whatever meaning they wish," and " '[the federal courts] are obliged to accept their interpretation, just as though it were written into the statute in so many words,' " unless that interpretation is " 'so unexpected, so outlandish, that no reasonable person could have expected it,' " quoting *Welton v. Nix,* 719 F.2d 969, 970 (8th Cir.1983)), *cert. denied,* 510 U.S. 830, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993); *Edens v. Shelter Mut. Ins. Co.,* 923 F.2d 79, 81 (8th Cir.1991) ("As a federal court interpreting a state statute, we are bound by the construction given the statute by the highest court within the state that has addressed the matter," citing *Chandler v. Presiding Judge, Callaway County,* 838 F.2d 977, 979 (8th Cir.1988)); *Medical Protective Co. v. Bell,* 912 F.2d 244, 245 (8th Cir.1990) (also citing *Chandler* ), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1056 (1991); *Chadima v. National Fidelity Life Ins. Co.,* 894 F.Supp. 1300, 1309 (S.D.Iowa 1995) (deferring to state court's interpretation even where the federal court found that interpretation both unduly restrictive and inconsistent with the plain language of the statute).

■ In the absence of such interpretation by the state court, however, the federal court, confronted with an issue of first impression under state law, has the "responsibility to predict, as best [it] can, how that [state high] court would decide the issue." *Brandenburg v. Allstate Ins. Co.,* 23 F.3d 1438, 1440 (8th Cir.1994). When they are helpful, the federal court may turn to the decisions of other jurisdictions for guidance on questions of first impression under the law of a particular state, *Gilliam v. Roche Biomedical Labs., Inc.,* 989 F.2d 278, 280 n. 3 (8th Cir.1993), and may also look at the manner in which the state court has construed similar statutory provisions under similar fact situations. *Becker,* 971 F.2d at 175 (looking at how the Arkansas courts had interpreted "immediately" in various criminal statutes in similar fact situations); *Edens,* 923 F.2d at 81 (considering a case in which no reported decision of the state court interpreted the statute in question, thus presenting an issue of first impression, and stating, "Without any direct guidance from the [state] courts, the court must look to other expressions of the [state] legislature on similar subjects as well as judicial interpretations from other jurisdictions that have enacted similar legislation.").

■ The Eighth Circuit Court of Appeals formerly held that, when the district court's interpretation of state law is on a matter of first impression, the appellate court would give "substantial weight and deference to the district court's ruling unless it is ' "fundamentally deficient in analysis or otherwise lacking in reasoned authority," ' " quoting *Kifer v. Liberty Mut. Ins. Co.,* 777 F.2d 1325, 1330 (8th Cir.1985), in turn quoting *Ancom, Inc. v. E.R. Squibb & Sons,* 658 F.2d 650, 654 (8th Cir.1981)). However, the Supreme Court has since made clear that a federal court of appeals must review de novo a federal district court's determination of state law. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113

L.Ed.2d 190 (1991); *Brandenburg,* 23 F.3d at 1440 (adding that the de novo review is "without deference").

 If, as the Eighth Circuit Court of Appeals has said, the district court's task in interpreting a state statute on a question of first impression is to "predict" how the state's high court would interpret the statute, *Brandenburg,* 23 F.3d at 1440, it follows that this court should apply the rules of statutory interpretation employed by the Iowa Supreme Court. The court therefore turns to articulations of the rules of statutory interpretation by the Iowa Supreme Court.

### 2. Rules of statutory interpretation

 The touchstone of statutory interpretation under Iowa law is legislative intent. *City of West Branch v. Miller,* 546 N.W.2d 598, 602 (Iowa 1996) ("In interpreting statutes, our ultimate goal is to determine legislative intent," citing *Peffers v. City of Des Moines,* 299 N.W.2d 675, 678 (Iowa 1980)); *Citizens' Aide/Ombudsman v. Miller,* 543 N.W.2d 899, 902 (Iowa 1996) ("[T]he ultimate goal of statutory interpretation is to give effect to the intent of the legislature," citing *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 283 (Iowa 1983), and Iowa R.App.P. 14(f), (g)); *Iowa Dep't of Transp. v. Iowa Dist. Court for O'Brien County,* 540 N.W.2d 40, 42 (Iowa 1995) ("In interpreting statutory language, our goal is to ascertain and give effect to the intention of the legislature," citing *Wellsburg–Steamboat Rock v. Iowa Dep't of Educ.,* 523 N.W.2d 749, 751 (Iowa 1994), and "[o]ur construction of the statute must be reasonably made and carry out the legislative intent," citing *Olson v. Prosoco, Inc.,* 522 N.W.2d 284, 293 (Iowa 1994)); *Holiday Inns Franchising, Inc. v. Branstad,* 537 N.W.2d 724, 728 (Iowa 1995). When the language of a statute is plain and its meaning is clear, Iowa courts "should not reach for meaning beyond [the statute's] express terms. . . . Nor should we resort to statutory rules of construction to determine legislative intent." *Id.* (internal citation omitted). Undefined words in a statute are to be given their plain and ordinary meaning, and the language is to be interpreted fairly and sensibly in accordance with the plain meaning of the words used by the legislature.

*State ex rel. Attorney General v. Terry,* 541 N.W.2d 882, 887–88 (Iowa 1995).

 However, when the statute's language is not clear and plain, Iowa courts "do resort to well-established rules of statutory construction." *Id.; United Fire & Cas. Co. v. Acker,* 541 N.W.2d 517, 519 (Iowa 1995) ("We engage in statutory construction only when the meaning of statutory provisions is unclear," citing Iowa Code § 4.6 and *Krull v. Thermogas Co.,* 522 N.W.2d 607, 612 (Iowa 1994)). A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute, and ambiguity may arise either from the meaning of particular words or from the general scope and meaning of a statute when all its provisions are examined. *Holiday Inns Franchising, Inc.,* 537 N.W.2d at 728. In such circumstances,

[o]ne such rule provides that we are bound by what the legislature said, rather than what it should or might have said. *State v. Jones,* 464 N.W.2d 241, 242 (Iowa 1990); Iowa R.App.P. 14(f)(13). We may not, under the guise of statutory construction, enlarge or otherwise change the terms of a statute. *Jones,* 464 N.W.2d at 242. Finally, "[w]e may consider the language used in the statute, the objects sought to be accomplished, the evils and mischiefs sought to be remedied and place a reasonable construction on the statute which will best effect its purpose rather than one which will defeat it." *Peffers,* 299 N.W.2d at 678.

*Miller,* 546 N.W.2d at 602; *see also Livingood v. Negrete,* 547 N.W.2d 196, 197 (Iowa 1996) (" 'In seeking legislative intent, the subject matter, effect, reason for the statute and consequences of proposed interpretations must all be considered,' " quoting *State ex rel. Hager v. Iowa Nat'l Mut. Ins.,* 430 N.W.2d 420, 422 (Iowa 1988)); *Acker,* 541 N.W.2d at 519 (citing identical rules to those quoted from *Miller* above, and adding that "[w]e will not construe a statute in a way that would produce impractical or absurd results," and that the court must look at the whole statute and not the separate parts); *Holiday Inns Franchising, Inc.,* 537 N.W.2d at 728 (citing similar standards). Furthermore, when confronted with ambiguous statutory

provisions, Iowa courts are permitted to consider the legislative history. *Citizen's Aide/Ombudsman,* 543 N.W.2d at 903 (citing Iowa Code § 4.6(3)).[12]

Legislative intent is " 'expressed by omission as well as by inclusion.' " *Wiebenga v. Iowa Dep't of Transp.,* 530 N.W.2d 732, 735 (Iowa 1995) (quoting *Barnes v. Iowa Dep't of Transp.,* 385 N.W.2d 260, 263 (Iowa 1986)). Thus, if the legislature had intended a statute to include a prohibition on certain conduct, the Iowa Supreme Court believes the legislature would have specifically mentioned that conduct, but where it did not, the statutory provision is deemed not to apply to that conduct. *Id.* Similarly, if the legislature had intended one statutory provision to apply without regard to another statutory provision already in force, it would have said so. *See Federal Land Bank of Omaha v. Bryant,* 445 N.W.2d 761, 762 (Iowa 1989); *Federal Land Bank of Omaha v. Sleister,* 444 N.W.2d 504, 506 (Iowa 1989). In both *Bryant* and *Sleister,* as Olympus argues, the Iowa Supreme Court held that it was wrong to conclude that because one foreclosure statute, Iowa Code § 654.16, did not expressly require a redeeming owner to reimburse the owner of the sheriff's certificate for the taxes, it was not the legislature's intent to require the redeeming owner to make such a reimbursement. *Id.; Sleister,* 444 N.W.2d at 506. Rather, in both cases, the Iowa Supreme Court held that because the foreclosure provision did not make an express exception to the general rule stated in other statutory provisions concerning protective advancements, Iowa Code §§ 629.1 and 629.2, those other statutory provisions were controlling. *Id.; Sleister,* 444 N.W.2d at 506.

Other rules of interpretation are also applicable to determining the relationship among statutes. For example, Iowa Code § 4.8 provides that "[i]f statutes enacted at the same time or different sessions of the legislature are irreconcilable, the statute latest in date of enactment by the general assembly prevails." *See also Citizens' Aide/Ombudsman,* 543 N.W.2d at 902–03 (quoting this statutory provision for rules of interpretation). However, "[w]hen statutes relate to the same subject matter or to closely allied subjects they are said to be in pari materia and must be construed, considered and examined in light of their common purpose and intent so as to produce a harmonious system or body of legislation." *Farmers Co-op. Co. v. DeCoster,* 528 N.W.2d 536, 538 (Iowa 1995); *accord State v. McSorley,* 549 N.W.2d 807, 809 (Iowa 1996); *State v. Peters,* 525 N.W.2d 854, 857 (Iowa 1994); *Schuler v. Rodberg,* 516 N.W.2d 902, 903–04 (Iowa 1994). The Iowa Supreme Court has explained,

> Statutes are in pari materia when they relate to the same person or thing, or to the same class of persons or things, or [when they] have a common purpose.... [I]t is well established that in the construction of a particular statute, or in the interpretation of its provisions, ... [all other] statutes which are in pari materia, should be read in connection with it; and such related statutes may or should be construed together as though they constituted one law, that is, they must be construed as one system.... This rule of construction applies although the statutes to be construed together were enacted at different times, and contain no reference to one another; and it is immaterial that the statutes are found in different chapters of the ... statutes and under different headings.

82 C.J.S. *Statutes* § 366, at 801–08 (1953). In addition, "the fact that one of the statutes is a special or particular, and the other a general, one, does not preclude

---

**12.** These rules for interpretation of ambiguous statutes are drawn from or parallel Iowa Code § 4.6, which provides as follows:

> If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:
>
> 1. The object sought to be attained.
> 2. The circumstances under which the statute was enacted.
> 3. The legislative history.
> 4. The common law or former statutory provisions, including laws upon the same or similar subjects.
> 5. The consequences of a particular construction.
> 6. The administrative construction of the statute.
> 7. The preamble or statement of policy.

Iowa Code § 4.6.

them from being in pari materia." 73 Am. Jur.2d *Statutes* § 189, at 389 (1974). Statutes, however, are ·not in pari materia when they are inconsistent.

Courts resort to the rule of in pari materia only in search of legislative intent. It is "only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and ... it cannot be invoked where the language of à statute is clear and unambiguous." 82 C.J.S. *Statutes* § 366, at 813 (1953).

*Peters,* 525 N.W.2d at 857–58.

■■■ Although, as *Peters* states, the in pari materia rule applies even when statutes have been enacted in different sessions of the legislature, the rule does apply with particular force when the statutes in question were passed at the same session of the legislature. *DeCoster,* 528 N.W.2d at 538; *accord McSorley,* 549 N.W.2d at 809–10. Nonetheless, it is assumed that the legislature's use of terms is in the accepted judicially established context unless there is clear evidence to the contrary, and furthermore, it is assumed that when the legislature enacts a provision, "it has available all the other provisions relating to the same subject matter whether in the same statute or in a separate act." *Id.* Therefore, it is reasonable to assume a definition in or the meaning of one statute is noted by the legislature in enacting another statute and to presume that the legislature "does not deliberately enact inconsistent provisions when it is cognizant of them both, without expressly recognizing the inconsistency." *Id.*

### 3. *Interpretation of the statutes involved*

The court concludes that Iowa Code §§ 628.6, 628.29, and 654.18 must be read in pari materia, and that, contrary to the arguments of defendants, sections 654.18 and 628.29 are not a self-contained statutory universe excluding the impact of .§ 628.6. There are a number of reasons for this conclusion.

■■■ First, the in pari materia rule can be invoked as to these statutory provisions, because some ambiguity embarks the court upon a search for legislative intent. *Peters,* 525 N.W.2d at 858. Although none of the terms of these statutes appear to be ambigu-

ous, they fall within the second ·type of ambiguity, that pertaining to the general scope or meaning of these statutes, because reasonable minds could differ or be uncertain as to whether § 628.6 applies to modify § 628.29, and hence, to modify redemption as provided for in § 654.18(2). *Holiday Inns Franchising, Inc.,* 537 N.W.2d at 728. This ambiguity is precisely the reason for the present declaratory judgment action, and the reasonable arguments of the parties demonstrate very · forcefully that reasonable minds could differ or be uncertain as to the scope and meaning of the statutes in question.

■■■ Second, the statutes by their terms relate to the same subject matter or to closely allied subjects, because they relate to the same class of persons or things, lienholders in the context of redemption of real property, and, furthermore, they have a common purpose, determination of who may redeem real property in foreclosure proceedings. *McSorley,* 549 N.W.2d at 809–10; *DeCoster,* 528 N.W.2d at 538; *Peters,* 525 N.W.2d at 857. Although the provisions in question were enacted at very different times, and, except for the cross-references between §§ 628.29 and 654.18(2), contain no references to one another, this fact is not an impediment to reading the statutes in pari materia. *Peters,* 525 N.W.2d at 857.

■■■ Furthermore, the provisions are not irreconcilable, such that the later provisions must be read to exclude the earlier provision. *Cf.* Iowa Code § 4.8; *Citizens' Aide/Ombudsman,* ·543 N.W.2d at 902–03. Rather, the statutes can be read to produce a harmonious system or body of legislation. *McSorley,* 549 N.W.2d at 809–10; *DeCoster,* 528 N.W.2d at 538; *Peters,* 525 N.W.2d at 857. Construing the statutes as one system, *Peters,* 525 N.W.2d at 857, § 628.6 has precisely the same effect upon the class of lienholders entitled· to redeem under §· 628.29 as it does upon the class of lienholders entitled to redeem under § 628.5, the provision of the Iowa Code identifying who may redeem property foreclosed under judicial foreclosure proceedings. Iowa Code § 628.5 provides, in pertinent part, that "[R]edemption may be made ... by any creditor whose claim becomes a lien prior to the expiration of the time allowed for such re-

demption." Iowa Code § 628.6 simply eliminates from the class of lienholders entitled to redeem under § 628.5 those lienholders holding only a mechanic's lien that has not been reduced to judgment. Similarly, while § 628.29 provides that "a lienholder of record may redeem real property which has been foreclosed by a mortgagee pursuant to the alternative voluntary foreclosure procedure provided in section 654.18," Iowa Code § 628.6 would only eliminate from the "lienholders of record" entitled to redeem those holders of mechanic's liens that have not been reduced to judgment.

Yet, defendants assert that there are practical or policy reasons why § 628.6 should not apply to redemption pursuant to § 628.29 and § 654.18 just as it applies to redemption pursuant to § 628.5 and judicial foreclosure. Because, once a statute has or statutes have been determined to be ambiguous, the court should consider, in attempting to determine legislative intent, among other things, the consequences of a particular interpretation and any impractical or absurd results of that interpretation, Iowa Code § 4.6; *Livingood*, 547 N.W.2d at 197; *Miller*, 546 N.W.2d at 602; *Acker*, 541 N.W.2d at 519; *Holiday Inns Franchising, Inc.*, 537 N.W.2d at 728, the court will consider this argument of the defendants. Defendants assert that § 628.6 serves a useful purpose and presents no impracticality in the context of judicial foreclosures, because, pursuant to Iowa Code § 628.3, the entire redemption period is a year, during which a junior lienholder with only a mechanic's lien would have ample time to foreclose the lien to judgment. However, defendants contend that the thirty-day period provided in non-judicial foreclosure under §§ 654.18 and 628.29, foreclosure of a mechanic's lien to judgment is simply not practicable, and the lienholder would therefore suffer extinction of his or her lien without any opportunity to protect the claim against the property.

While this parade of horribles is unlikely in practice, even if matters play out this way, the court does not find application of § 628.6 to non-judicial foreclosure necessarily has impractical or unjust results. First, the court notes that only a mechanic's lienholder who has slept on his or her rights by failing to reduce the lien to judgment would have only thirty days within which to hasten to judgment before the lien was extinguished. In this case, Kehm was the only lienholder without a judgment at the time the notice of non-judicial foreclosure of the Alpana Property was sent to junior lienholders. Kehm had almost six months between the filing of its lien and the notice of non-judicial foreclosure during which it did nothing to foreclose the lien. Second, only in the unusual situation, in which the foreclosure notice was sent in near proximity to the time of filing of a mechanic's lien would it be impractical for the lienholder to foreclose the lien in the time available. Furthermore, although a mechanic's lien is not reduced to judgment would be extinguished if the lienholder had not reduced the lien to judgment, that would not leave the lienholder wholly without remedies to recover the debt represented by the lien. This argument of the defendants fails to demonstrate that reading the three statutory provisions in question in pari materia leads to a result with such dire consequences that it cannot be what the legislature intended. The court has found, and the parties have cited, no authority suggesting that a mechanic's lienholder who has not reduced the lien to judgment should have greater redemption rights in non-judicial foreclosure proceedings than the lienholder would have in judicial foreclosure proceedings. Indeed, the inability to redeem with a mechanic's lien not reduced to judgment is consistent with the obvious legislative intent of § 628.6, which defendants neglect by focusing on §§ 628.29 and 654.18. In other words, the legislature considered it no bad thing if a mechanic's lienholder who had not reduced the lien to judgment was precluded from redeeming property and thereby suffered extinction of the lien. Reading the requirements of § 628.6 into non-judicial foreclosure therefore appears to the court more consistent with legislative intent than excluding its effect would be.

Furthermore, Kehm's argument, offered in its post-trial brief, that if reduction of a mechanic's lien to judgment were required, Liberty could have compelled it to reduce its mechanic's lien to judgment pursuant to Iowa Code § 572.28, misses the mark. Kehm's argument suggests that Liberty should have predicted that Kehm would want

to redeem the property and should therefore have compelled Kehm to place itself in the legal position to effect redemption. However, nothing about either judicial or non-judicial foreclosure imposes upon the creditor seeking to foreclose a duty to compel other lienholders to prepare to redeem the property. The court has every confidence, therefore, that the legislature intended lienholders to see to their own qualification to redeem property on which they hold liens should foreclosure proceedings be instituted. *Wiebenga*, 530 N.W.2d at 735 (legislative intent is " 'expressed by omission as well as by inclusion.' ").

■■■ However, perhaps the strongest indication that the result contemplated by the court here is what the legislature intended is that the legislature omitted to state an exclusion of the applicability of § 628.6 from the statutory scheme created by §§ 628.29 and 654.18. Section 628.6 represents the long-standing rule on redemption by mechanic's lienholders in foreclosure proceedings, and the court can presume that the legislature enacted the non-judicial foreclosure scheme aware of this special rule for mechanic's liens. *DeCoster*, 528 N.W.2d at 538. The court may further presume that the legislature did not deliberately enact an inconsistent provision without expressly recognizing the inconsistency. *Id.*

■■■ Contrary to defendants' arguments, there is no clear evidence that the legislature intended to make § 628.6 inapplicable to redemption under § 628.29. Defendants contend that the first sentence of § 628.29, which states that "[a] lienholder of record may redeem real property" in non-judicial foreclosure proceedings, is a clear expression that the limitation on a mechanic's lienholder's ability to redeem found in § 628.6 was not intended to apply. The court does not agree. First, this supposed repudiation of the applicability of § 628.6 is at best implied rather than express, as § 628.29 does not expressly mention either mechanic's liens or § 628.6. Thus, the language of § 628.29 is an exceptionally odd way to exclude the effect of another statute. Surely, had the legislature intended such a result, it would have been easy for it to have found a less obtuse, if not absolutely clear, way of saying so. Language such as, "Notwithstanding the provisions of § 628.6 ...," or "Notwithstanding any other provision of law ...," or a myriad of other statements expressly excluding the effect of § 628.6 would have made clear that the legislature intended to abrogate § 628.6 in the context of non-judicial foreclosure. No such language appears here. Second, the court has already demonstrated that § 628.6 modifies language in § 628.5 similar to that found in the first sentence of § 628.29, such that modification of this later provision as well suggests a harmonious system. Thus, the court cannot find even an implied repudiation of § 628.6 in § 628.29. Third, if the language of § 628.6, which refers specifically only to mechanic's liens, can be deemed to be in irreconcilable conflict with the more general language of § 628.29, which states that any junior lienholder may redeem property, without reference to whether the lien is a mechanic's lien or whether that lien has been reduced to judgment, the more specific statutory provision, § 628.6, would prevail, irrespective of the time of its enactment. *State ex rel. Lankford v. Allbee*, 544 N.W.2d 639, 642 (Iowa 1996); *Iowa Dep't of Revenue and Fin. v. Peterson*, 532 N.W.2d 805, 806 (Iowa 1995) (stating this rule, but finding it inapplicable where the statutes did not conflict); Iowa Code § 4.7 (further noting that the general and specific provisions should be construed, if possible, to give effect to both); *Kelly v. State*, 525 N.W.2d 409, 411 (Iowa 1994).[13] However, the court is of the opinion

---

13. Although Liberty has recognized the rule that, in cases of conflict, the more specific statute takes precedence over the more general one, Liberty asserts that the "general" statute here is § 628.6, because it applies to redemption generally, while § 628.29 is the "specific" statute, applicable by its terms only to non-judicial foreclosures. The court simply does not agree with this characterization. The "general" statutes are 628.5 and 628.29, each of which provide, in general terms, for who may redeem under vari-

ous kinds of foreclosure proceedings. Thus, they refer to "creditors" whose claims become liens, § 628.5, and "lienholders of record," § 628.29, as parties who may redeem. Section 628.6, however, is the "specific" statute, specifically narrowing the list of potential redeemers under either § 628.5 or § 628.29 by eliminating from the list of lienholders holders of mechanic's liens who had not reduced their liens to judgment. Were the court to invoke the rule that the specif-

that the two provisions are not in irreconcilable conflict and that the court's construction of the two statutes in pari materia, with § 628.6 limiting the language of § 628.29 referring to "a junior lienholder," gives effect to both provisions, just as § 628.6's modification of § 628.5 gives effect to both of those provisions. Iowa Code § 4.7.

■ Finally, this federal court may also look for guidance in interpreting these statutes at the manner in which the state court has construed similar statutory provisions under similar fact situations. *Becker,* 971 F.2d at 175; *Edens,* 923 F.2d at 81. The Iowa Supreme Court has made clear that other provisions of Chapter 654 that do not expressly exclude the effect of other statutory provisions in other chapters cannot be read to exclude the effect of those statutory provisions from other chapters. *Bryant,* 445 N.W.2d at 762; *Sleister,* 444 N.W.2d at 506. There is no express exclusion in either § 654.18 or § 628.29 of the effect of § 628.6. Thus, the court concludes, as best it can, *Brandenburg,* 23 F.3d at 1440, that the Iowa Supreme Court would interpret § 628.6 to apply with full force and effect to redemption under alternative non-judicial foreclosure proceedings.

Consequently, the court holds and declares that a holder of a mechanic's lien that has not been reduced to judgment does not have a lien of such character as to entitle the holder to redeem property in non-judicial foreclosure proceedings pursuant to Iowa Code Ch. 654.18.[14]

## C. Relief

■ In light of the court's conclusion and declaration just above, the court grants the principal relief Olympus sought in this declaratory judgment action, pursuant to 28 U.S.C. § 2201, which is to declare the rights of parties here. The court declares and orders that Kehm, as the holder of only a mechanic's lien that had not been reduced to judgment, did not have a lien of such charac-

ter as to redeem the Alpana Property from Liberty. Section 2202 of the Declaratory Judgment Act provides that, once the declaration of rights provided for in § 2201 has been granted, the court may grant "[f]urther necessary or proper relief based on a declaratory judgment or decree ... after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. In this case, that "further necessary and proper relief" is to return the parties to the status quo ante the improper redemption. Kehm's redemption of the Alpana Property will therefore be vacated. Kehm will also be ordered to tender back to Liberty a Special Warranty Deed to the property herein described as the Alpana Property, and legally described as outlots A and B in industrial park third addition, Mason City, Cerro Gordo County, Iowa. Liberty will also be ordered simultaneously to tender to Kehm the sum Kehm paid in redemption of the property, plus any interest accrued thereon from the date of redemption until the date of tendering of the deed and redemption funds.

## III. CONCLUSION

The court has attempted to predict what the Iowa Supreme Court would decide on this question of first impression under Iowa law, can the holder of a mechanic's lien who had not reduced his lien to judgment properly redeem real property under Iowa's alternative voluntary non-judicial foreclosure procedure? Applying the Iowa Supreme Court's own rules of statutory interpretation, the court concludes that the statutory provision asserted by the plaintiff, on the one hand, and the provisions asserted by the defendants, on the other hand, must be read in pari materia. Consequently, Iowa Code § 628.6 is applicable to redemption by a mechanic's lienholder in non-judicial foreclosure proceedings.

ic statute takes precedence over the general one, the court would find that this rule would also require § 628.6 to take precedence over the more general terms of § 628.29.

**14.** Because the court concludes that Kehm's failure to reduce its mechanic's lien to judgment is

fatal to Kehm's right of redemption here, the court need not consider Olympus's argument that the mechanic's lien was not valid, because it was purportedly untimely filed or for other reasons.

Specifically,

1. Pursuant to 28 U.S.C. § 2201, the court declares and orders that Kehm, as the holder of only a mechanic's lien that had not been reduced to judgment, did not have a lien of such character as to redeem the Alpana Property from Liberty.

2. Pursuant to 28 U.S.C. § 2202, the court directs the following further and necessary relief to return the parties to the status quo ante the improper redemption:

a. Kehm's redemption of the property described herein as the Alpana Property, and legally described as outlots A and B in industrial park third addition, Mason City, Cerro Gordo County, Iowa, is vacated.

b. Kehm is ordered to tender back to Liberty a Special Warranty Deed to the property herein described as the Alpana Property, and legally described as outlots A and B in industrial park third addition, Mason City, Cerro Gordo County, Iowa.

c. Liberty is ordered simultaneously with Kehm's tender of a Special Warranty Deed to tender to Kehm the sum Kehm paid in redemption of the property, plus any interest accrued thereon from the date of redemption until the date of tendering of the deed and redemption funds.

d. The simultaneous tendering back of the deed and redemption funds shall occur not less than ten (10) days from the date of this order.

e. All liens, leases, contracts, obligations, or encumbrances on the property herein described as the Alpana Property, and legally described as outlots A and B in industrial park third addition, Mason City, Cerro Gordo County, Iowa, valid and enforceable as of the date of Kehm's attempted redemption of the property, are reinstated and shall continue in full force and effect as though such attempted redemption had not occurred and shall be legally binding on the parties to such liens, leases, contracts, obligations, or encumbrances, or on their heirs, assigns, or successors. Notwithstanding the preceding sentence, judgments against the property satisfied on or after the date of Kehm's attempted redemption remain satisfied.

3. The Temporary Restraining Order issued in this case on June 18, 1996, shall remain in full force and effect until the court orders it dissolved pursuant to the written motion of any party or thirty days from the date of this order, whichever comes first.

**IT IS SO ORDERED.**